Filed 12/20/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMUNDO ESCUTIA RODRIGUEZ,<br><br>    Defendant and Appellant. | H039137<br>(Monterey County<br> Super. Ct. No. SSC120174A) |

## I. INTRODUCTION

We are asked once again to consider whether various probation conditions are unconstitutionally vague and overbroad without an explicit scienter element. A related claim is that an explicit constructive knowledge requirement is unconstitutional. We will conclude that the constructive knowledge element in three probation conditions is not vague. We will also conclude that scienter is implicit in some of the challenged conditions, although a knowledge element should be added to cure concerns about a prohibition on the use or possession of "intoxicants." As to a stay-away provision that refers only to "the victim" when there were two victims, we will reverse the judgment so the trial court can eliminate the ambiguity.

## II. TRIAL COURT PROCEEDINGS

### A. UNDERLYING OFFENSES AND PLEA

According to the probation report, in the early morning of July 30, 2012, Soledad police officers responded to a report of two males "banging on vehicles" and apprehended defendant Raymundo Rodriguez, then 18 years old, and a 17-year-old male

as they tried to hide in a bush. They were arrested along with an 18-year-old female. A car stereo was located near the males. "Victim 1" later described that two windows were broken on her 1993 Honda Accord and a car stereo was missing. Victim 2 never responded to later inquiries as to the extent of any property loss.

Defendant appeared intoxicated at the time of his arrest. At the police station, he repeatedly advised his female companion to keep quiet and he told the male to "request 'K-Pod'" in the jail. Defendant shouted gang slogans including "'SVL'" during the booking process and called the booking officer names. He was wearing black gloves and a red T-shirt and baseball jacket.

Defendant had been documented by the Soledad Police Department as member of the Norteño criminal street gang Soledad Vatos Locos. He admitted to a probation officer in this case that he "hangs around" with Norteño gang members, and the same probation officer noted defendant had several gang-related tattoos.

A complaint filed July 31, 2012 charged defendant with burglary of a commercial building occupied by Maria Amador (count 1; Pen. Code, § 459),[1] attempted burglary of a commercial building occupied by Dale Terry (count 2; §§ 664, 459), dissuading a witness from reporting a crime (count 3; § 136.1, subd. (b)(1)), and resisting arrest (count 4; § 148, subd. (a)(1)).[2]

On August 23, 2012, in exchange for a grant of felony probation, defendant agreed to waive preliminary hearing and plead guilty to an added charge of receiving or concealing stolen property (count 5; § 496), with the understanding that it could be reduced to a misdemeanor after 18 months without a probation violation. (§ 17, subd.

---

[1] Unspecified section references are to the Penal Code.

[2] The record does not explain the connection between the facts of auto burglary and the allegations of commercial burglary. We assume there were clerical errors in the complaint's descriptions of counts 1 and 2.

(b).) Defendant signed and initialed a written waiver of rights form and entered a guilty plea.

## B. CONDITIONS OF PROBATION

A probation report was prepared which noted that, since pleading guilty, defendant was charged with misdemeanor public intoxication and resisting arrest on September 1, 2012.

The report recommended suspending imposition of sentence in the felony case and placing defendant on formal probation with 20 conditions, including:

"7. Pay victim restitution to Victim 1 in the amount of $942.38, and to Victim 2, in an amount to be determined by the Probation Officer. Liability for restitution is joint and several with [the juvenile arrested with defendant]. This order is enforceable as a civil judgment. (PC § 1202.4(a)(3)(B), § 1202.4(i))

"8. Not use or possess alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician; not traffic in, or associate with persons you know, or have reason to know, to use or traffic in, narcotics or other controlled substances. [¶] . . . [¶]

"10. Not possess, receive or transport any firearm, ammunition or any deadly or dangerous weapon. Immediately surrender any firearms or ammunition you own or possess to law enforcement. (PC 12021) [¶] . . . [¶]

"12. Stay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates.

"13. Participate in any counseling or substance abuse program the Probation Officer deems necessary, including approved residential treatment. . . .

"14. Not visit or remain in any area you know, have reason to know, or are told by the Probation Officer to be a gang-gathering area. (The term 'gang' in these conditions of probation refers to 'criminal street gang', as defined in PC § 186.22.)

"15. Not associate with any individuals you know, have reason to know, or are told by the Probation Officer to be gang members, drug users, or on any form of probation or parole supervision. [¶] . . . [¶]

"17. Not possess, wear, use or display any item you know, have reason to know, or have been told by the Probation Officer to be associated with membership or affiliation in a gang, including, but not limited to, any insignia, emblem, button, badge, cap, hat, scarf, bandanna, or any article of clothing, hand sign, or paraphernalia to include the colors red and blue.

"18. Do not obtain any new tattooing upon your person while on probation supervision. You shall permit photographing of any tattoos on your person by law enforcement."

At the sentencing hearing on December 5, 2012, defendant pleaded guilty to public intoxication in his new case, and then made the following objections to probation conditions as numbered in the probation report: 14, 15, 17, and 18 were inapplicable as the crime was not gang-related; 14, 15, and 17 were vague as not specifying the requisite knowledge element; 8 and 13 were unwarranted absent evidence of substance abuse; and a receiving stolen property charge does not justify the victim restitution in 7. The prosecutor responded that the gang terms and victim restitution were justified by the facts.

Defense counsel assented to the court imposing probation conditions "by reference to the page and the paragraph numbers" in the probation report. The trial court suspended imposition of sentence for three years pursuant to the plea agreement and placed defendant "on formal probation under the terms and conditions set forth on pages 12 through 14 of the probation officer's report. [¶] The Court notes the objection of Counsel on behalf of the defendant. However, the Court is persuaded that the restitution provisions on page 7 or paragraph 7 should remain."

The court continued: "the Court is leaving that intact in [paragraph 8] regarding possession of alcohol and intoxicants. Exhibit A is your plea to the public intoxication charge. So I would leave that intact. [¶] The counseling and abuse, substance abuse program on paragraph 13, the Court will keep that as part of your conditions of probation. And the gang conditions 14, 15, 16, 17, I believe there is nexus for the imposition of those conditions and that they appear on the page 7 of the report where you apparently -- or the probation and police records indicate that you are a known Norteño gang member. You denied that, but later on you indicated that you hang around with them. [¶] So that, if there's any -- you're on the brink of being a member of those gangs, this is time to break off or not to involve yourself with them. [¶] So paragraphs 13 through 17 remain intact." The court did not expressly address the vagueness claims.

On December 12, 2012, the trial court signed a minute order for the December 5, 2012 hearing that purported to list the probation conditions imposed, although without corresponding numbering.

### III. ANALYSIS

#### A. STANDARD OF REVIEW

We review probation conditions for abuse of discretion and will uphold the trial court's broad discretion so long as a challenged condition relates generally to criminal conduct or future criminality or specifically to the probationer's crime. (*People v. Lent* (1975) 15 Cal.3d 481, 486; *People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*).) The reasonableness of a probation condition may be challenged on appeal only if the probationer has questioned it in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 237; see *In re Sheena K.* (2007) 40 Cal.4th 875, 882 (*Sheena K.*).) However, a reviewing court may examine the constitutionality of a probation condition, even if not raised in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record. (*Sheena K.*, *supra,* 40 Cal.4th at pp. 888-889.)

5

On appeal defendant does not renew his reasonableness challenges to conditions 7, 8, 13, 14, 15, 17, and 18. He renews his vagueness challenges to conditions 14, 15, and 17, and newly asserts that conditions 8, 10, and 12 are vague and overbroad.

## B. IDENTIFYING THE PROBATION CONDITIONS TO REVIEW

When we are asked to review the reasonableness or constitutionality of probation conditions, we often find multiple versions of the conditions in the record, including a set of proposed conditions in a probation report, the trial court's oral statement of the conditions imposed, and a minute order memorializing the conditions imposed at the hearing. The practice in Monterey County is for the judges to sign the minute orders, as occurred in this case.

The probation report's proposals may become the court's order if the court either incorporates them by reference or quotes them. *People v. Thrash* (1978) 80 Cal.App.3d 898 observed that probation conditions "need not be spelled out in great detail in court as long as the defendant knows what they are; to require recital in court is unnecessary in view of the fact the probation conditions are spelled out in detail on the probation order and the probationer has a probation officer who can explain to him the contents of the order." (*Id.* at pp. 901-902.) In this case, the trial court's oral order incorporated the proposed conditions by express reference to condition numbers and pages. Accordingly, we will review the conditions as phrased in the probation report that were expressly adopted by the court's oral order.

Frequently, as here, we encounter discrepancies in how the probation conditions imposed are stated in the reporters' versus clerks' transcripts. In this case, there are unexplained major and minor differences between the conditions proposed in the probation report and adopted by the trial court and the conditions in the signed minute

6

order.[3] When an irreconcilable conflict exists between the transcripts of the court reporter and the court clerk, the modern rule is not automatic deference to the reporter's transcript, but rather adoption of the transcript due more credence under all the surrounding circumstances. (*People v. Smith* (1983) 33 Cal.3d 596, 599; *People v. Harrison* (2005) 35 Cal.4th 208, 226; *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346.) In this case, there is no indication that the trial judge intended the signed minute order to modify or correct his prior oral adoption of the conditions as stated in the probation report. Defendant does not assert there is inherent vagueness in having two inconsistent sets of probation conditions. On appeal the parties correctly assume that the conditions adopted by the trial court as stated in the probation report are controlling, and it is those conditions we will review. We will order the minute order corrected to reflect the conditions actually imposed.

## C. CONDITIONS WHICH REFER TO KNOWLEDGE

On appeal defendant contends that three conditions are unconstitutionally vague because they include a constructive knowledge element.

---

[3] For example, the minute order added "drugs" to the condition 8 prohibition against using or possessing "alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician." In the same condition it also changed "reason to know" to "reason to suspect" in prohibiting trafficking in or associating with "persons you know, or have reason to know, to use or traffic in, narcotics or other controlled substances." In condition 15, it eliminated "have reason to know" from prohibiting association "with any individuals you know, have reason to know, or are told by the Probation Officer to be gang members, drug users, or on any form of probation or parole supervision." In condition 17, which prohibits possessing, wearing, using, or displaying any symbol of gang membership or affiliation, it changed "any item you know, have reason to know, or have been told by the Probation Officer to be associated with membership or affiliation" to "any item you know or suspect to be associated with membership or affiliation." There are other less substantive differences as well.

7

In relevant part, the conditions state: "14. Not visit or remain in any area you know, *have reason to know*, or are told by the Probation Officer to be a gang-gathering area. [¶] 15. Not associate with any individuals you know, *have reason to know*, or are told by the Probation Officer to be gang members, drug users, or on any form of probation or parole supervision. [¶] . . . [¶] 17. Not possess, wear, use or display any item you know, *have reason to know*, or have been told by the Probation Officer to be associated with membership or affiliation in a gang, including, but not limited to, any insignia, emblem, button, badge, cap, hat, scarf, bandanna, or any article of clothing, hand sign, or paraphernalia to include the colors red and blue." (Defendant's emphasis.)

It is established that, when a probation condition restricts the right of association by requiring avoidance of persons based on some status that may not be readily apparent (e.g., probationer, parolee, gang member, drug user, minor), the condition requires an explicit mental element. (*People v. Kim* (2011) 193 Cal.App.4th 836, 845 (*Kim*) and cases there cited.)

Defendant interprets *Sheena K., supra,* 40 Cal.4th 875 as establishing a "constitutionally required standard of actual knowledge." We disagree.

In *Sheena K.*, the Supreme Court applied to probation conditions the due process requirements of penal statutes. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' (*People v. Castenada* (2000) 23 Cal.4th 743, 751.) The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' (*ibid.*), protections that are 'embodied in the due process clauses of the federal and California Constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7).' (*Ibid.*) The vagueness doctrine ' "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " [Citations.]' (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115 (*Acuna*).)" (*Sheena K., supra,* 40 Cal.4th 875, 890.)

8

At issue in *Sheena K.* was a condition prohibiting "association with 'anyone disapproved of by probation.'" (*Sheena K.*, *supra,* at p. 889.) The Supreme Court found that without an express knowledge element, that particular condition was unconstitutionally vague because it "did not notify defendant in advance with whom she might not associate through any reference to persons whom defendant knew to be disapproved of by her probation officer." (*Id.* at pp. 891-892.) The court noted that there were no "additional oral or written comments" by the trial court clarifying what knowledge was required. (*Id.* at p. 891.)

To avoid vagueness, the probation condition at issue in *Sheena K.* required a knowledge element, and the court determined that it should be explicit. The court did not discuss whether the required knowledge must be actual or could be constructive. As that separate issue was not decided in *Sheena K.*, we do not interpret the court's implicit approval of adding actual knowledge as precluding constructive knowledge.

Cases after *Sheena K.* have added a constructive knowledge element to eliminate vagueness. In *People v. Turner* (2007) 155 Cal.App.4th 1432, the court modified a condition "to require that defendant must either know or reasonably should know that persons are under 18 before he is prohibited from associating with them." (*Id.* at p. 1436.) Similarly, in *People v. Moses* (2011) 199 Cal.App.4th 374, the court modified probation conditions to include both actual and constructive knowledge requirements. ("'Do not associate with any persons you know or reasonably should know to be minors, or frequent places where you know or reasonably should know minors congregate . . . .'") (*Id.* at pp. 381-82.)

Constructive knowledge has also been upheld in penal statutes. The defendant in *People v. Mathews* (1994) 25 Cal.App.4th 89 (*Mathews*) was convicted of drawing or exhibiting a firearm in a rude, angry, or threatening manner in the immediate presence of a peace officer by a person "who knows, or reasonably should know, that the victim is a peace officer engaged in the performance of his or her duties." (§ 417, subd. (c).) The

9

court concluded that "[c]ulpability based on the 'should have known' constructive knowledge standard is not vague or overbroad." (*Mathews*, *supra,* at p. 98; see also *In re Jorge M.* (2000) 23 Cal.4th 866, 886.)

In light of this authority, we conclude that the constructive knowledge element in probation conditions 14, 15, and 17 creates no unconstitutional vagueness.[4]

This court's decision in *People v. Gabriel* (2010) 189 Cal.App.4th 1070 (*Gabriel*) does not alter our conclusion. Gabriel challenged as vague a probation condition prohibiting association "'with any individuals you know or suspect to be gang members, drugs users, or on any form of probation or parole supervision.'" (*Id.* at pp. 1073.) *Gabriel* reasoned: "To 'suspect' is 'to imagine (one) to be guilty or culpable on slight evidence or without proof' or 'to imagine to exist or be true, likely, or probable.' (Merriam-Webster's Collegiate Dict. (10th ed.1999) p. 1187 (*Webster's* ).) To 'imagine' is 'to form a notion of without sufficient basis.' (*Webster's,* at p. 578.) Given this lack of specificity, the word 'suspect' fails to provide defendant with adequate notice of what is expected of him when he lacks actual knowledge that a person is a gang member, drug user, or on probation or parole. Moreover, inclusion of this word renders the condition insufficiently precise for a court to determine whether a violation has occurred. Accordingly, this condition must also be modified to delete the word 'suspect.'" (*Gabriel*, *supra,* 189 Cal.App.4th at p. 1073.)

Unlike the challenged condition in this case, the condition in *Gabriel* did not expressly require the probationer to have a reasonable suspicion of a companion's status. "Reasonable suspicion" is a familiar concept in the law of search and seizure that

---

[4] This court recently reached the same conclusion about a condition like number 15. (*People v Mendez* (H038616, December 3, 2013) __ Cal.App.4th __.)

involves an objective standard. (E.g., *U.S. v. Sokolow* (1989) 490 U.S. 1, 7-8; *People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

*Gabriel* did not discuss or determine whether an objective mental element such as constructive knowledge would be impermissibly vague. We therefore find no inconsistency with our conclusion that "reason to know" is not unconstitutionally vague.

### D. CONDITIONS WITH UNSTATED MENTAL ELEMENTS

### 1. CONDITIONS PROHIBITING POSSESSION

#### a. Weapons and Ammunition

Condition 10 states: "Not possess, receive or transport any firearm, ammunition or any deadly or dangerous weapon. Immediately surrender any firearms or ammunition you own or possess to law enforcement. (PC 12021) " Defendant contends this condition is unconstitutionally vague and overbroad without an express knowledge requirement.

Probation conditions are analyzed according to the same standards for determining whether penal statutes are unconstitutionally vague, as discussed in *Sheena K.*, *supra,* 40 Cal.4th 875, 890. Defendant does not cite nor do we find any authority establishing that greater clarity is required of probation conditions.

Probation conditions may be classified according to their purposes. Some reinforce the requirements of penal statutes the probationer may be especially at risk of violating. Others are intended to keep the probationer away from situations likely to lead to criminal conduct. "[E]ven if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Olguin*, *supra,* 45 Cal.4th 375, 380.)

As a convicted felon, defendant would violate the Dangerous Weapons Control Law if he "owns, purchases, receives, or has in possession or under custody or control any firearm . . . " (§ 29800, subd. (a)(1).) Further, "[n]o person prohibited from owning

11

or possessing a firearm . . . shall own, possess, or have under custody or control, any ammunition or reloaded ammunition." (§ 30305, subd. (a)(1).)

These statutes are part of the "Deadly Weapons Recodification Act of 2010" ("the Recodification") which took effect on January 1, 2012. The Recodification provides definitions for "firearm," "ammunition," and "deadly weapon," all phrases used in the probation condition.[5]

Case law has established that these possession offenses have implicit scienter elements. In *People v. King* (2006) 38 Cal.4th 617 (*King*), the court stated: "Although the language of [former] section 12020(a)(1) does not specifically mention a culpable mental state, this does not mean that the Legislature did not intend to require one. As a general rule, no crime is committed unless there is a union of act and either wrongful intent or criminal negligence. (*In re Jorge M.* (2000) 23 Cal.4th 866, 872; see § 20.) This rule, which is 'firmly embedded' in ' "the principles of Anglo-American criminal jurisprudence" ' [citation] is so basic that wrongful intent or criminal negligence 'is an invariable element of every crime unless excluded expressly or by necessary implication' [citations], and 'penal statutes will often be construed to contain such an element despite their failure expressly to state it' (*In re Jorge M., supra,* at p. 872; [citation].)" (*King, supra,* 38 Cal.4th at pp. 622-23.)

The statutes prohibiting possession of firearms, ammunition, and deadly weapons are understood to have implicit scienter requirements. We understand the challenged probation condition, which uses the same language, to reinforce those prohibitions. When a probation condition intended to prohibit criminal conduct uses words and phrases with established meanings in statutes, we will interpret the words as having those

---

[5] Section 16520 defines "firearm." Section 16150 gives two meanings to "ammunition." Section 16430 defines "deadly weapon" by reference to section 16590, which lists 26 generally prohibited types of weapons.

meanings, rather than imposing a different set of obligations on a probationer. We conclude that the challenged probation condition contains those implicit scienter requirements, and due process does not require making them explicit.

This court reached the same conclusion in *Kim*, *supra,* 193 Cal.App.4th 836, which determined that a probation condition ("'The defendant shall not own, possess, or have within his/her custody or control any firearm or ammunition for the rest of his/her life pursuant to [former] Sections 12021 and 12316 [, subdivision] (b)(1) of the Penal Code'" (*id.* at p. 841)) included an implicit knowledge requirement just as the underlying statutes had been interpreted. (*Id.* at p. 847.) "[W]here a probation condition implements statutory provisions that apply to the probationer independent of the condition and does not infringe on a constitutional right, it is not necessary to include in the condition an express scienter requirement that is necessarily implied in the statute." (*Id.* at p. 843.)

The Attorney General relies on *Kim* and asserts that "the reference to section 12021 alleviates any vagueness concerns." Defendant correctly points out that former section 12021 was part of Title 2 of Part 4 of the Penal Code that was repealed by the same legislation that enacted the Recodification effective January 1, 2012. (3 West's Session Laws, Stats. 2010, ch. 711, § 4, p. 4036.) In other words, condition 10 imposed on December 5, 2012 referenced a repealed statute. (The text of former section 12021 was recodified in section 29800 with updated statutory references.) But it was not essential to *Kim*'s reasoning that the probation condition reviewed there cited two statutes. A probation condition should be given the same interpretation as a statute it implements so long as the wording is substantially similar, even if the condition does not incorporate the statute by reference. Further, the Recodification was not "intended to substantively change the law relating to dangerous weapons." (§ 16005.) Every provision that is "substantially the same as a previously existing provision . . . shall be considered as a reenactment and continuation thereof and not as a new enactment" (§

13

16010) and any "judicial decision interpreting a previously existing provision is relevant in interpreting any provision of" the Recodification. (§ 16020.)

Following *Kim*, *People v. Moore* (2012) 211 Cal.App.4th 1179 concluded that a probation condition (" 'Do not own, use, or possess any dangerous or deadly weapons, including firearms, knives, and other concealable weapons' ") had an implicit knowledge requirement. (*Id.* at p. 1183.) "Moore's concern is not that he is unable to discern what conduct is prohibited. Instead, he worries that he might accidentally possess an item he would readily recognize as prohibited by the probation condition. Under these circumstances, the requirement that a violation of the weapons condition must be willful and knowing adequately protects him from being punished for innocent possession. The addition of an express knowledge requirement would add little or nothing to the probation condition." (*Id.* at p. 1188.)

The association prohibition in *Sheena K.*, *supra,* 40 Cal.4th 875 is an entirely different type of condition than one prohibiting possession of weapons and ammunition. It affected constitutionally protected conduct not in itself criminal, in contrast to a possession condition directed at criminal conduct that is not constitutionally protected. As *Kim*, *supra,* 193 Cal.App.4th 836 pointed out, "a convicted felon has no constitutional right to bear arms." (*Id.* at p. 847.) Of greater importance, the association condition did not arise from or purport to implement any statutory prohibition, so it was not possible to derive an implicit scienter element by interpreting parallel statutory language.

The weapon possession condition in this case was obviously designed to reinforce general prohibitions against possessing a variety of deadly weapons as well as specific restrictions on felons possessing firearms and ammunition. It follows that the condition has the same implicit scienter requirements as the statutes it implements. The mental element is constitutionally clear without being explicit.

Defendant asserts that a probation condition must be "closely tailored" when it impacts a constitutionally protected right. This overbreadth claim fails because he does

14

not identify what constitutional right is impacted by a condition restricting a felon's possession of ammunition and deadly weapons. (*Olguin*, *supra,* 45 Cal.4th 375, 384-85.)

### b. Controlled Substances, Intoxicants, and Alcohol

Condition 8 states in pertinent part: "Not use or possess alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician . . . ."

Defendant contends that this probation condition, like the weapon possession condition, is "impermissibly vague or overbroad in that in fails to require that [defendant] have conscious awareness of the act of use or possession." The Attorney General alternatively asserts that "knowledge is implicit in all the probation conditions," but that, if we find the condition vague, it should be modified to provide that defendant "not knowingly possess alcohol/narcotics, drugs, or other controlled substances."

Applying the same reasoning as above leads to a conclusion that a scienter element is reasonably implicit in this condition.

Division 10 of the Health and Safety Code is the "California Uniform Controlled Substances Act." (Health & Saf. Code, § 11000, et seq.) Case law has construed these statutes as including implicit knowledge elements. "[A]lthough criminal statutes prohibiting the possession, transportation, or sale of a controlled substance do not expressly contain an element that the accused be aware of the character of the controlled substance at issue ([Health & Saf. Code,] §§ 11350-11352, 11357-11360, 11377-11379), such a requirement has been implied by the courts." (*People v. Coria* (1999) 21 Cal.4th 868, 878.) "The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character.' " (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.) "Although the possessor's knowledge of the presence of the controlled substance and its nature as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required." (*Id.* at pp. 1184-1185.)

15

If a person believes an item he possesses or ingests is a controlled substance, it is no defense that he was wrong about which controlled substance it is. (*People v. Romero* (1997) 55 Cal.App.4th 147, 157; *People v. Velez* (1985) 175 Cal.App.3d 785, 795-796 [marijuana cigarette laced with phencyclidine].) On the other hand, it is no crime to ingest a drug involuntarily, for example, if someone secretly spiked the punch at a party. (Cf. *People v. Scott* (1983) 146 Cal.App.3d 823, 832 [after drinking punch at a party, the defendant hallucinated he was a secret agent pursued by the CIA and took a motorbike to escape].)

To the extent condition 8 reinforces defendant's obligations under California's Uniform Controlled Substances Law, the same knowledge element which has been found to be implicit in those statutes is reasonably implicit in the condition. What is implicit is that possession of a controlled substance involves the mental elements of knowing of its presence and of its nature as a restricted substance.

We recognize that the proscriptions in condition 8 are not limited to substances regulated by statute, but extend to alcohol and the generic "intoxicants." Because the latter category is susceptible of different interpretations,[6] which may include common items such as adhesives, bath salts, mouthwash, and over the counter medicines, the addition of an express knowledge requirement will eliminate any potential for vagueness or overbreadth in applying the condition.

## 2. STAY-AWAY CONDITION

Condition 12 requires defendant to "Stay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates." We regard such stay-away conditions as a form of prohibiting association,

---

[6] Indeed, the only definition we find in a current California statute is: "'Intoxicant' means any form of alcohol, drug, or combination thereof." (Harb. & Nav. Code, § 651, subd. (j).)

16

usually identifying particular individuals to avoid, rather than more general classes of people.

It is well established that a probation violation must be willful to justify revocation of probation. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379; *People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; § 1203.2, subd. (a).) It is also established that "Penal Code section 26 provides that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent; a crime cannot be committed by mere misfortune or accident" (*Coria*, *supra,* 21 Cal.4th 868, 876) and that a probation condition "should be given 'the meaning that would appear to a reasonable, objective reader.'" (*Olguin*, *supra,* 45 Cal.4th 375, 382.)

No reasonable law enforcement officer or judge can expect probationers to know where their victims are at all times. The challenged condition does not require defendant to stay away from all locations where the victim might conceivably be. It requires defendant to remove himself ("Stay away at least 100 yards") when he knows or learns of a victim's presence.

However, this condition suffers from a fatal ambiguity in that it has not actually designated from whom defendant should stay away. Defendant is enjoined in condition 12 to avoid "the victim," "the victim's" residence or place of employment, and any vehicle "the victim" owns or operates. This phrasing assumes there was one victim. Condition 7, however, establishes that there were two victims, as it requires defendant to pay restitution to "Victim 1" in a specified amount and "Victim 2" in an amount to be determined by the probation officer. It is not clear whether the court considered only one of these people as "the victim" to be avoided. Condition 12 also does not sufficiently identify victims, addresses, or vehicles they own or operate. We find nothing in the probation report providing this information, except a reference to Victim 1 owning a 1993 Honda Accord. As defendant points out, nothing in the circumstances of the crime

17

indicates defendant knows or reasonably should know the car owner's name, where she resides or works, or what other vehicles she may operate. The Attorney General concedes that a knowledge element should be added to this condition.

The trial court may modify the condition to require that defendant not knowingly come within 100 yards of a known or identified victim. It would be even more clear and informative if the condition actually named the victims and described any locations and vehicles that defendant is to stay 100 yards from. The case must be remanded as that information does not appear in the record.

## IV. DISPOSITION

The order granting probation is reversed so that the trial court may modify conditions 8 and 12 consistent with our discussion. The court is also directed to correct the minute order for the December 5, 2012 hearing so that it reflects the probation conditions actually imposed.

18

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.

*People v Rodriguez*

**H039137**

| | |
|---|---|
| Trial Court: | Monterey County Superior Court, Case No.: SSC120174A |
| Trial Judge: | Honorable Efren N. Iglesia, Judge |
| Attorneys for Plaintiff/Respondent: The People | Christopher J. Wei Office of the Attorney General |
| Attorneys for Defendant/Appellant: Raymndo Escutia Rodriguez | Julie Ann Dunger Attorney at Law Sixth District Appellate Program |

*People v. Rodriguez*
H039137