Filed 8/1/14  In re C.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.A., a Person Coming Under the Juvenile Court Law. | H039846 (Santa Clara County Super. Ct. No. JV39486) |
| THE PEOPLE, Plaintiff and Respondent, v. C.A., Defendant and Appellant. | |

# I. INTRODUCTION

Carlos A., then 13 years old, admitted breaking the arm of a six-year old boy by pushing him to the ground, a battery involving serious bodily injury (Pen. Code, §§ 242-243, subd. (d)).  The juvenile court determined that Carlos was not suitable for the deferred entry of judgment (DEJ) program, declared him to come within Welfare and Institutions Code section 602,[1] and imposed a number of probation conditions, including that he have no contact with the named victim.  On appeal, Carlos contends that excluding him from DEJ was an abuse of discretion, the no-contact probation condition must be modified to add a scienter element, and the court erred by failing to state whether

---

[1] Unspecified section references are to the Welfare and Institutions Code.

his offense was a felony or misdemeanor.  The Attorney General disputes the first two contentions, arguing that the probation condition was effectively clarified by an earlier restraining order, while conceding the matter should be remanded to characterize the offense.  We will reverse the dispositional order so that the court may properly characterize the offense and clarify the no contact condition.

## II.  JUVENILE COURT PROCEEDINGS

### A. PETITION AND RESTRAINING ORDER

A petition under section 602 charged Carlos, born in 1999, with felony battery causing serious bodily injury to six-year-old Adrian R.  The police report described Carlos as bullying younger children in his Morgan Hill neighborhood.  Adrian broke his right arm when Carlos pushed him to the ground outside their neighboring apartments.  Adrian said he was playing with a friend, not with Carlos because Carlos is older and hurts him.  Carlos was seven inches taller than Adrian and twice his weight.

Carlos first appeared in court with legal representation in September 2012.  There were several continuances to allow defense counsel to investigate.  At a hearing on January 15, 2013, defense counsel announced that her investigation was complete and that Carlos had been behaving well.  She proposed continuing the case until he turned 14, at which time he could be considered for deferred entry of judgment (DEJ).  The prosecutor was agreeable pending further investigation.  The court expressed interest in obtaining school transcripts and ordered probation to submit a DEJ suitability report, though Carlos was still 13.

A DEJ suitability report was filed two weeks later.  Carlos described the incident as involving "'play wrestling'" when he pushed Adrian, Adrian fell to the ground, cried, and went home.  Carlos said he was not aware Adrian was injured, he had not intended to injure him, and he was remorseful.  Adrian's father said Carlos was a bully who had acted intentionally.  According to Carlos's mother, he was performing well in seventh grade except for one difficult class.  The probation officer considered Carlos suitable for

2

the DEJ program, stating he had "demonstrated motivation and a positive educational background by his level of participation at school and counseling services," as well as his mother's support and his remorse.

The court received the report at a hearing in February 2013. Using Judicial Council Form JV-250, the court issued a one-year restraining order to keep Carlos away from Adrian R. The court described the restraining order as follows: "[Y]ou may not be around Adrian R[]. You cannot molest, attack, strike, threaten, sexually assault, batter, harass, destroy the personal property of, contact or disturb his peace. You must not contact him directly or indirectly. So no e-mail. No mail. No Facebook. None of that." When Carlos said he understood, the court continued, "You're to stay 300 yards away from the protected person, his home, his school and his daycare if there is any." Carlos acknowledged that they did not attend the same school and that he cannot go to Adrian's school.

## B.  JURISDICTION HEARING

A Probation Department memo filed in April 2013 attached a list of disciplinary incidents from Carlos's elementary and middle schools, which included him causing a physical injury in May 2012 at the elementary school, plus two instances of bullying in September 2012 and defiant disruption in March 2013, all at the middle school. According to Carlos, the other " 'bullying' " incidents were not his fault. He was simply defending himself after being teased about his appearance.

The jurisdictional hearing was held in April 2013. Carlos and his attorney initialed and signed a four-page "waiver form with advisements, stipulations, declarations, findings, and orders." The court reviewed the waivers with Carlos, who said he understood the requirements of the DEJ program as explained by his attorney and that the court would decide whether he could participate in the program. Carlos admitted a battery causing serious injury by breaking Adrian's arm. The court found that Carlos knew the wrongfulness of his offense at the time, even though he was under 14. Boxes

3

on the form addressing the court's discretion to treat the offense as either a felony or a misdemeanor were unchecked.

Carlos's attorney argued in favor of placing him in the DEJ program. The probation officer also favored DEJ, while the prosecutor opposed it. The court recessed to review the records and then ruled:

> "I have reviewed the police report, especially the statement of the victim Adrian []. [¶] I also reviewed the disciplinary record and attendance records that were attached to the court memorandum of April 23rd, 2013 and I also reread the DEJ report submitted by the Probation Officer previously.

> "I think this is a very serious offense and I do have to look at the seriousness of the offense. It is not just the age difference, but the fact that the victim said that he doesn't like to play with Carlos because Carlos hurt him and there was no warning. [¶] There was no "playing" with Carlos according to the victim's statement, which is different from what Carlos indicates happened and how Adrian's arm was broken.

> "It was also very significant to the Court that in looking at the disciplinary incident that was provided, the incident that brings Carlos here today occurred on July l0th i[n] 2012. It appears from the record that on May 25th, 2012 on the playground at school Carlos also caused physical injury. [¶] Then on September 5th, 2012 there was [a] bullying incident and another bullying incident on September 28th, 2012. In between those two dates of bull[ying], Carlos has made his first appearance in court September 17th while this incident was pending. [¶] He continued to bully the other minors at school and I can't overlook that he apparently caused some physical injury previously at school. Then recently there has been some truancy and cuttings, also some defiance and disruption.

> "In the suitability report, the Probation Officer either didn't have these records or didn't have this information or didn't know about it. [¶] I find this report incomplete and to have not given me the true situation.

> "I don't really see an improvement in his record in terms of absences and tardies. I believe there are two F's now instead of just one as previously reported.

> "Given all of this information at this time, I believe the minor's needs exceed the DEJ program and given the seriousness of the offense, I'm not going to allow him to participate in the DEJ program."

The court sustained the petition, saying that Carlos should get all the services he needs.

4

On the "Jurisdiction Hearing-Juvenile Delinquency" Form JV-644 are boxes for recording admissions by count number. A column of five boxes is provided under the heading "misdemeanor," with five more under the heading "felony" and five more "to be specified at disposition." (Capitalization omitted.) Next to "PC243/243(d)" the box for "felony" is checked. On the next page, a form statement that the child is described in section 602 was checked. The court signed the form on that page, but made no statement on the record or on the form characterizing the offense as a felony or a misdemeanor.

## C. DISPOSITION HEARING

A probation report filed at the May 2013 disposition hearing recommended a number of conditions of probation, including "that said minor have no contact of any type with Adrian R." The probation officer's opinion was that "Carlos is an immature young boy [who] may not fully understand the consequences of his actions. Although Carlos' behavior may not have been intentional, the injuries sustained to the victim are serious. Given that Carlos has been disciplined twice this year for similar behavior demonstrates he may require additional supervision other than what the DEJ program could have provided him."

Carlos's counsel submitted the matter at the hearing. A representative of a social services agency explained that they were in the process of connecting Carlos to the YMCA for social activity, they monitor him at school, and follow up with him and his mother. They did not arrange counseling for Carlos, as that would be done through his school.

A probation officer recommended adding one condition to provide that Carlos be returned to his parents' custody. After modifying a community service condition, the court found "that the recommendations of Probation as modified on the record are in the minor's best interest. They shall become orders of disposition effective immediately." A restitution hearing was scheduled for a later date.

5

The court did not announce a determination that the offense was a felony or a misdemeanor. The court on the same day signed Judicial Council Form JV-665 entitled "Disposition-Juvenile Delinquency." In a section for findings and orders is a checked box followed by the preprinted text: "The court previously sustained the following counts. Any charges which may be considered a misdemeanor or a felony for which the court has not previously specified the level of offense are now determined to be as follows." Below this text are two columns of six boxes, the first labeled "Misdemeanor" and the second "Felony." Other headings in the same row are "Enhancement []," "Count," and "Statutory violation" separated by spaces. Typed below "Count" is "1," below "Statutory violation" is "PC 242/243(d)," and in the same row the box for felony is checked, not the box for misdemeanor. Immediately above the court's signature on the following page is a checked box next to text providing that "[a]ll prior orders not in conflict … remain in full force and effect." Attached to the disposition form are the recommended probation conditions.

The court also signed an order of probation to which were attached the probation conditions, including "that said minor have no contact of any type with Adrian R."

## III. ANALYSIS

### A. DENIAL OF DEFERRED ENTRY OF JUDGMENT

#### 1. DEJ Statutes

Both the Penal Code (§§ 1000-1000.6) and the Welfare and Institutions Code (§§ 790-795) provide for the deferred entry of judgment in certain situations. In the juvenile context, DEJ is one of two rehabilitative options short of declaring a minor who has committed an offense to be a ward of the court. A more structured alternative than a program of supervision is to evaluate a minor's performance on probation while deferring entry of judgment without finding the minor to be a ward under section 602.

Only certain minors are eligible for a DEJ program. The statutory criteria are: the minor has committed a felony offense that is not among the 30 offenses listed in section

6

707, subdivision (b) or the 17 probation-disqualifying offenses listed in Penal Code section 1203.06, subdivision (a)(1); the minor has not had probation revoked without completion nor been declared a ward for committing a felony offense nor committed to the Youth Authority; and the minor is at least 14 years old at the time of the hearing. (§ 790, subd. (a)(5).) If the minor meets these criteria, the prosecutor shall so declare to the court. (§ 790, subd. (b).) The prosecutor's declaration of eligibility is the first step of the process. (*In re C.W.* (2012) 208 Cal.App.4th 654, 660 (*C.W.*).)

The second step of the process is the court's determination of suitability. (*C.W.*, *supra*, at p. 660.) "[I]f the minor admits the charges in the petition and waives time" to pronounce judgment, "the court may summarily grant" DEJ or "may refer the case to the probation department" (§ 791, subd. (b)) and "may set the hearing for" DEJ (§ 790, subd. (b)). "When directed by the court, the probation department shall" investigate "whether the minor is a person who would be benefited by education, treatment, or rehabilitation." (§ 791, subd. (b).) "[T]he court may grant" DEJ "[u]pon a finding that the minor is … suitable" for DEJ and "would benefit from education, treatment, and rehabilitation efforts … ." (§ 790, subd. (b).) Upon granting DEJ, the juvenile court "may … impose any other term of probation authorized by this code that the judge believes would assist in the education, treatment, and rehabilitation of the minor and the prevention of criminal activity." (§ 794.)

After one to three years of successful performance on probation, the charges may be dismissed. (§ 791, subd. (a)(3); cf. § 793, subd. (c).) "The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000." (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 (*Martha C.*).)

## 2. Discretion to Deny Deferred Entry of Judgment

The above statutes make a clear distinction between the prosecutor's mandatory duty to inform the court that a minor is eligible for DEJ under the statutory criteria and

7

the juvenile court's discretionary authority to find the minor suitable for DEJ. (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 603-607 (*Sergio R.*).) Meeting the statutory criteria does not compel a suitability finding. (*Id.* at p. 605.) A juvenile court's suitability finding is reviewed on appeal for abuse of discretion. (*In re Damian M.* (2010) 185 Cal.App.4th 1, 5 (*Damian M.*).)

*Martha C.*, *supra*, 108 Cal.App.4th 556 quoted uncodified findings of Proposition 21 and concluded that they "express not only a strong preference for rehabilitation of first-time nonviolent juvenile offenders but suggest that under appropriate circumstances DEJ is required." (*Id.* at p. 561.) The *Martha C.* court found nothing in section 791 "suggesting that any consideration other than the minor's nonamenability to rehabilitation is a proper basis for denying deferred entry of judgment" (*ibid.*) and concluded that "denial is proper only when the trial court finds the minor would not benefit from education, treatment and rehabilitation." (*Ibid.*) In that case, the trial court "denied DEJ because it wished to send a message to other potential juvenile drug smugglers that there would be permanent consequences flowing from such criminal activity. This was not an appropriate basis for denying DEJ since it had nothing to do with Martha's potential for rehabilitation." (*Id.* at p. 562.)

Carlos relies on *Martha C.* and its progeny to argue that the juvenile court "relied upon improper factors" in denying DEJ including "the seriousness of the offense, the age difference between Carlos and Adrian," and other incidents of Carlos bullying Adrian and others.

If a minor's crime is serious enough to be listed in either section 707, subdivision (b), or Penal Code section 1203.06, subdivision (a)(1), the minor is simply ineligible for DEJ. However, the fact that the committed offense does not preclude *eligibility* does not require the juvenile court to ignore either the seriousness of the offense or the criminal sophistication of the minor in evaluating DEJ *suitability*. *Damian M.*, *supra*, 185 Cal.App.4th 1 upheld a DEJ denial based partly on trial court findings that "Damian had

8

engaged in sophisticated organized criminal activity" and "would more likely benefit from formal probation … ." (*Id.* at p. 5.) *Sergio R.* found no abuse of discretion in denying DEJ to a minor who was "an entrenched Norteño gang member with a history of drug abuse and admitted addiction to methamphetamine." (*Sergio R., supra*, 106 Cal.App.4th. at p. 608.) His charged crimes involved possessing and using methamphetamine and committing a residential burglary with other gang members that involved taking property including a .22 caliber rifle. (*Ibid.*) Citing *Sergio R.*, *Martha C.*, *supra*, 108 Cal.App.4th 556 acknowledged that "a court might find that the circumstances of a crime indicate a minor is not amenable to rehabilitation … ." (*Id.* at p. 562.)

We reject any suggestion that the seriousness of a minor's criminal behavior is irrelevant to the minor's ability to benefit from less formal treatment and rehabilitation efforts. In reply, Carlos concedes that the nature of the offense is relevant, but contends it is not dispositive. It is similarly relevant that the behavior appears to be chronic and ingrained. The juvenile court is not required to grant DEJ to every eligible minor who would benefit from any education, treatment, and rehabilitation efforts. The real question in many cases is whether the minor would derive greater benefit from more formal and longer-term probation supervision than is available on a DEJ program.

Here, what the juvenile court said was serious about the offense was not the severity of the broken arm or simply the age difference between Carlos and Adrian, but that the victim said Carlos had hurt him before and they were not playing, contrary to what Carlos said. The juvenile court also found significant that it was not an isolated incident. There was evidence that Carlos continued to act like a bully after this incident and even after being brought to court for it.

We believe that the trial court's authority was not as limited as Carlos contends and that these considerations were relevant to his suitability for DEJ. We recognize that the probation officer in initially recommending DEJ noted the existence of some factors

9

favorable to Carlos (remorse, school grades, participation in counseling), but we find no abuse of discretion in the juvenile court deciding otherwise. The juvenile court pointed out that the probation officer was apparently not then aware of the other factors the court found more significant. Carlos does not establish that the juvenile court struck an irrational or arbitrary balance by either ignoring factors cited in the suitability report or relying on improper factors.

### B. CHARACTERIZATION OF OFFENSE AS FELONY OR MISDEMEANOR

Carlos faults the juvenile court for failing to specify whether his offense was a felony or a misdemeanor. The Attorney General concedes the merit of this contention without suggesting that the juvenile court's completion of Judicial Council Form JV-655 after the disposition hearing satisfied the court's obligations.

Section 702 states in part, "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

California Rules of Court, rule 5.778 provides that the juvenile court, after an admission or plea of no contest, must make findings on several topics, including "(9) In a section 602 matter, the degree of the offense and whether it would be a misdemeanor or felony had the offense been committed by an adult. If any offense may be found to be either a felony or misdemeanor, the court must consider which description applies and *expressly declare on the record* that it has made such consideration and must state its determination as to whether the offense is a misdemeanor or a felony. These determinations may be deferred until the disposition hearing." (Italics added.) The same express declaration is required by rule 5.780(5) after a contested jurisdictional hearing and at the disposition hearing "[u]nless determined previously … ." (Cal. Rules of Court, rule 5.795(a); cf. rule 5.790(a)(1).)

In *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy W.*), the California Supreme Court observed that the express declaration requirement of section 702 serves at least two

purposes. It provides "a record from which the maximum term of physical confinement for an offense can be determined, particularly in the event of future adjudications." (*Manzy W., supra,* at p. 1205.) It "also serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its [statutory] discretion … ." (*Id.* at p. 1207.)

The court summarized its earlier decision in *In re Kenneth H.* (1983) 33 Cal.3d 616 (*Kenneth H.*) with approval as reiterating "that neither the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony." (*Manzy W., supra,*. at p. 1208.) It also quoted, " 'the crucial fact is that the court did not state at any of the hearings that it found the [offense] to be a felony.' " (*Ibid.*, quoting *Kenneth H.*, *supra*, at p. 620.)

Nowhere in this record do we find an oral statement by the juvenile court acknowledging its statutory obligation to classify the wobbler charge of battery with serious bodily injury as a felony or misdemeanor. The crime is designated a felony on Form JV-655, but the judge's signature on a form order does not assure us that the juvenile court itself "was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) We accept the Attorney General's concession that the matter must be remanded for the court to exercise that discretion on the record.

## C. No Contact Condition

Carlos contends that the probation condition stating he is to "have no contact of any type" with Adrian is unconstitutionally vague and overbroad "because it lacks an explicit requirement that there is only a violation if contact with the victim is knowingly made." Carlos relies on this court's decision in *People v. Pirali* (2013) 217 Cal.App.4th 1341. However the condition at issue there prohibited access to the Internet or any other on-line service by a person who had possessed child pornography. (*Id.* at p. 1344.) That condition was not designed to restrict association or contact with another person.

11

The Attorney General argues that the restraining order has sufficiently clarified the meaning of contact,  while Carlos notes that the restraining order also lacks a knowledge element.  We recognize that a trial court's clarifying remarks may eliminate potential ambiguity and vagueness in a probation condition.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 891-892.)  But we disagree with the Attorney General's contention that there were such remarks in this case.  We do not regard the restraining order issued on February 11, 2013, as a clarification of the probation condition imposed almost three months later on May 7, 2013.  In imposing the probation condition, the court made no reference to the prior order.  The court adopted many of the probation report's recommendations, but that report also made no reference to the restraining order.  We therefore review the language of the condition standing alone.

In *People v. Rodriguez* (2013) 222 Cal.App.4th 578 (*Rodriguez*), this court addressed probation conditions restricting association in general and a "stay-away" condition in particular.  We understand a no-contact probation condition as typically prohibiting two kinds of contact, physical proximity and communication.  A stay-away condition more narrowly targets physical proximity.  Carlos's contentions focus on the proximity restraints of the condition prohibiting contact, thus *Rodriguez* is apposite.

Probation conditions restricting association "based on some status that may not be readily apparent (e.g., probationer, parolee, gang member, drug user, minor) …" must include a mental element.  (*Rodriguez, supra,* at p. 587.)  Naming the individual to avoid is one way of conveying the requisite knowledge to the probationer.  (*Id.* at p. 595.)[2]

---

[2]  The challenged condition in *Rodriguez*, *supra*, 222 Cal.App.4th 578, had a "fatal ambiguity" because it instructed the defendant to stay at least 100 yards away from " 'the victim' " when there were two victims.  (*Id.* at pp. 594-595.)  We acknowledged that an alternative clarification to naming the victims was to prohibit the defendant from "knowingly" coming near "a known or identified victim."  (*Id.* at p. 595.)

Carlos does not seek clarification of whom he must not contact, as the condition names the victim who is known to him. He is concerned about unintentionally and unknowingly walking down the same street or into the same grocery store as Adrian, or Adrian riding by in a car Carlos does not recognize.

Addressing similar concerns, *Rodriguez*, *supra*, 222 Cal.App.4th 578 observed, "It is well established that a probation violation must be willful to justify revocation of probation." (*Id.* at p. 594). Also, "a probation condition 'should be given "the meaning that would appear to a reasonable, objective reader."'" (*Ibid.*, quoting *People v. Olguin* (2008) 45 Cal.4th 375, 382.)

> "No reasonable law enforcement officer or judge can expect probationers to know where their victims are at all times. The challenged condition does not require defendant to stay away from all locations where the victim might conceivably be. It requires defendant to remove himself ('Stay away at least 100 yards … .') when he knows or learns of a victim's presence." (*Ibid.*)

Without reaching the issue of whether it is constitutionally necessary to reference scienter in the no-contact condition, we observe that including "knowingly" would help ensure that Carlos would not be penalized if he unknowingly comes into contact with the victim. We acknowledge that a trial court does not err by expressly including a knowledge element in a probation condition, since violations must be willful. Our remand for the juvenile court to characterize the offense as a felony or misdemeanor will also allow the court to modify the condition to specify that Carlos not knowingly have contact with Adrian R.

## IV. DISPOSITION

The dispositional order is reversed. The case is remanded for the juvenile court to characterize the offense as a felony or misdemeanor and to allow the juvenile court to modify the no-contact probation condition to specify that Carlos not knowingly have contact with Adrian R.

13

_____

Grover, J.


**I CONCUR:**


_____

Bamattre-Manoukian, Acting P.J.


*In re C.A., a Person Coming Under the Juvenile Court Law.*
*The People v C.A.*
**H039846**

**Mihara, J., Concurring and Dissenting.**

I disagree with my colleagues' disposition of this appeal with regard to the no-contact probation condition. Carlos contends that this condition is constitutionally vague and overbroad because it does not contain a knowledge requirement. My colleagues assert that they are not reaching this issue, but they also decline to grant Carlos the relief that he seeks. That is not correct.

We have only three available options for disposing of this appeal. First, if we conclude that the Constitution *does not* require the inclusion of a knowledge requirement, we reject Carlos's contention and refuse to modify the no-contact condition. Second, if we conclude that the Constitution *does* require a knowledge requirement, we credit Carlos's contention and require the juvenile court to modify the condition to add a knowledge requirement. Third, if we choose not to resolve whether a knowledge requirement is constitutionally required because we believe that one should be included regardless, we must grant Carlos the relief he seeks and order the juvenile court to modify the condition to add a knowledge requirement.

I believe that a knowledge requirement is constitutionally mandated. Thus, I cannot concur in a disposition that does not require the juvenile court to modify the condition to add a knowledge requirement. I could have concurred if my colleagues had chosen either the second option or the third option. However, they choose a fourth option that is not available. They decline to reach Carlos's contention and also decline to grant him the relief he seeks. As a Court of Appeal, we should resolve the contentions raised by appellants unless they do not affect our disposition of the appeal. Here, unless we require the juvenile court to add a knowledge requirement to the no-contact condition, we must resolve Carlos's contention. Because my colleagues fail to do so, I dissent.

_____

Mihara, J.

2