Filed 12/3/14  P. v. Wilson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JASON ZYNN WILSON,<br><br>　　　Defendant and Appellant. | H039970<br>(Santa Clara County<br>Super. Ct. No. C1234091) |

　　　Defendant Jason Zynn Wilson appeals from a judgment of conviction entered after he pleaded guilty to possession of marijuana for sale (Health & Saf. Code, § 11359) and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (a)).  The trial court sentenced defendant to 16 months in county jail, suspended execution of sentence, and placed him on probation for two years subject to various terms and conditions.  On appeal, defendant contends:  (1) the trial court erred when it denied his motion to suppress evidence; (2) trial counsel rendered ineffective assistance; (3) two of the probation conditions were unconstitutional; and (4) the trial court failed to determine his ability to pay a supervised probation fee.  We reverse the judgment and remand for compliance with Penal Code section 1203.1b and modification of one of the probation conditions.

## I. Statement of Facts

At about 8:00 p.m. on June 5, 2012, Deputy Adam Guzman was on patrol in a marked patrol vehicle when he noticed defendant riding his motorized scooter. The deputy drove behind defendant for about 50 yards and then honked his horn for "one second," because the scooter was loud and he wanted to get defendant's attention. According to the deputy, it was not a standard car horn and produced a sound similar to an air horn. Defendant turned and looked at the deputy. Deputy Guzman did not activate either his emergency lights or his sirens. He also did not shout at defendant, give him any orders, or make any movements indicating that he wanted defendant to pull over. After defendant pulled over to the right shoulder of the road, Deputy Guzman notified dispatch that he was making contact with an individual and parked his vehicle about 15 feet in front of defendant. The patrol vehicle did not prevent defendant from driving away.

Deputy Guzman exited his vehicle, approached defendant, and asked him in a conversational tone of voice if he could speak to him. Defendant said, "Sure. Go ahead." Defendant also asked, "What is this about?" Deputy Guzman responded, "Nothing. I just wanted to talk to you." The deputy also told defendant that "people possibly could complain about the noise." He then asked defendant if he had a driver's license, and defendant handed him a California identification card. While Deputy Guzman was standing next to defendant, he requested County Communication to run a DMV check.[1]

Deputy Munns arrived at the scene, parked his vehicle to the right of Deputy Guzman, and stood to the right of Deputy Guzman and about two feet away from defendant. Deputy Munns asked defendant if he had any weapons. Defendant replied that he had a knife and gave Deputy Munns permission to retrieve it. Neither deputy had handcuffed defendant, told him that he was under arrest or drawn their service weapons.

---

[1] Deputy Guzman was unaware at the time that it was a violation of the Vehicle Code to drive a motorized scooter without a license.

Deputy Munns retrieved the knife and asked defendant if he could search him. Neither deputy told defendant that if he did not consent to the search that he would be arrested. They also did not tell defendant that they could get a search warrant. After defendant gave his consent to a search, Deputy Munns felt a container in defendant's right front pocket. When defendant told him that it contained marijuana, Deputy Munns asked if he could remove the marijuana. Defendant gave his consent and the deputy removed the marijuana. Defendant told the deputies that he had a prescription or a letter permitting him to have medical marijuana. Deputy Guzman then asked defendant if he could search his backpack, and defendant said no. However, Deputy Guzman searched the backpack and found 13 to 15 plastic baggies containing marijuana and a cell phone.

## II. Discussion

### A. Motion to Suppress Evidence

Defendant contends that the trial court erred when it denied his motion to suppress evidence. He contends that he was illegally detained in violation of his Fourth Amendment rights when Deputy Guzman stopped him without reasonable suspicion of criminal activity.

The Fourth Amendment, made applicable to the states through the due process clause of the Fourteenth Amendment, protects the individual against unreasonable searches and seizures. (*Mapp v. Ohio* (1961) 367 U.S. 643, 655-660.) When a police officer engages in conduct that violates the Fourth Amendment, the evidence obtained through such conduct is subject to the exclusionary rule. (*People v. Mayfield* (1997) 14 Cal.4th 668, 760.)

"For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are . . . 'consensual encounters' [citation], which are those police-individual interactions which result in no restraint of an

3

individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' [Citation.] Second, there are . . . 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' [Citation.] Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

In determining whether an encounter between a police officer and an individual constitutes a detention, we note that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*).) For Fourth Amendment purposes, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." (*United States v. Mendenhall* (1980) 446 U.S. 544, 553.) "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick*, at p. 439.) "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [citations]; ask to examine the individual's identification [citations]; and request to search his or her luggage [citation]—as long as the police do not convey a message that compliance with their requests is required." (*Bostick*, at pp. 434–435.) "Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with

4

the officer's request might be compelled." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).) "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*Ibid.*)

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' " (*People v. Weaver* (2001) 26 Cal.4th 876, 924, quoting *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Here, Deputy Guzman's initial contact with defendant did not constitute a detention. The deputy's act of sounding his horn momentarily was not constitutionally different from a deputy's call to a person to get his attention. (*Manuel G.*, *supra*, 16 Cal.4th at p. 811.) When defendant turned toward the deputy, the deputy did not activate his emergency lights or siren, make any movements indicating that defendant should pull over, or order defendant to pull over. After defendant stopped, Deputy Guzman asked him if he could speak to him. Defendant replied, "Sure, go ahead." When defendant asked, "What is this about," the deputy responded, "Nothing. I just wanted to talk to you." Deputy Guzman did not display a weapon or touch defendant, and he spoke to defendant in a conversational tone of voice. Defendant voluntarily provided identification and stood with the deputy as the information was transmitted for verification. Defendant then consented to a search by Deputy Munns, who found the knife and the marijuana. Thus, in considering the totality of the circumstances, the deputies' conduct would not "have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick*, *supra*, 501 U.S. at p. 439.) Accordingly, the trial court did not err when it denied defendant's motion to suppress evidence.

Defendant argues, however, that the present case is analogous to *People v. Garry* (2007) 156 Cal.App.4th 1100. We disagree. In *Garry,* the officer turned on his patrol car's spotlight and shined it on the defendant, who was standing on a corner about 35 feet away. (*Id.* at p. 1104.) The officer then exited his car and walked "'briskly'" toward the defendant, who said, "'"I live right here,"'" and pointed to a nearby house. (*Ibid.*) The officer responded that he wanted to confirm that, asked the defendant if he was on probation or parole, and reached the defendant within "'two and a half, three seconds'" after leaving his car. (*Ibid.*) *Garry* held that, based on the officer's very intimidating actions, a detention occurred. (*Id.* at p. 1112.)

Here, unlike shining a spotlight on a person, sounding an air horn momentarily does not signal to a reasonable person that he or she is not free to leave. Moreover, in contrast to *Garry,* Deputy Guzman did not rush toward defendant and he asked defendant whether he could speak to him. Thus, *Garry* is factually distinguishable from the present case.

Defendant also argues that the detention began when Deputy Guzman honked his horn to effectuate a traffic stop. However, this court must consider the totality of the circumstances surrounding the encounter. (*Bostick*, *supra*, 501 U.S. at p. 439.) As previously discussed, these circumstances established a consensual encounter between Deputy Guzman and defendant.

## B. Ineffective Assistance of Counsel

During the hearing on the motion to suppress evidence, the prosecutor elicited testimony relating to a cell phone which was found in defendant's backpack. Defense counsel objected to any further questioning regarding the cell phone on the ground that the defense was only contesting the events leading up to the search of the backpack. The trial court sustained the objection. Text messages from the cell phone indicated that defendant was engaged in the sale of marijuana. Evidence relating to defendant's post-

6

*Miranda*[2] statement was also not introduced into evidence because it occurred after the search of the backpack.

Defendant argues that "[i]f this court believes that trial counsel failed to properly present evidence of the text messages and post-*Miranda* statement [in connection with the motion to suppress evidence], then his failure constituted ineffective assistance of counsel . . . ." The Attorney General contends that this claim may not be reviewed on appeal, because defendant failed to obtain a certificate of probable cause. Even assuming that this issue may be raised on appeal, it lacks merit.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.)

Here, defendant has failed to establish prejudice. The text messages and post-*Miranda* statement were products of the consensual encounter. Thus, even if a reasonably competent counsel would have elicited this evidence at the hearing, it would not have been suppressed.

### C.  Probation Conditions

Defendant challenges the constitutionality of two probation conditions on the ground that they lack a knowledge requirement. Defendant argues that he could violate his probation for accidently consuming or possessing alcohol or an illegal substance.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The trial court imposed the following probation conditions as set forth in the probation report:  "8.  The defendant shall not possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale.  [¶]  9.  The defendant shall not possess or use illegal drugs or illegal controlled substances or go anywhere he/she knows illegal drugs or non-prescribed controlled substances are used or sold."

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.]"  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121.)  However, a probation condition may be challenged on the grounds that it is unconstitutionally vague. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.)  Although defendant failed to object on constitutional grounds to these conditions, we may consider his facial, constitutional challenges because they present purely questions of law.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 888 (*Sheena K.*).)  Accordingly, our review of these probation conditions is de novo.  (*Id.* at p. 889.)

In examining whether a probation condition is void for vagueness, courts have considered whether the condition is " 'sufficiently precise for the probationer to know what is required of him [or her] . . . .' "  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890, quoting *People v. Reinertson* (1986) 178 Cal.App.3d 320, 324-325.)  "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' "  (*Sheena K.*, at p. 890.)

In *People v. Rodriguez* (2013) 222 Cal.App.4th 578 (*Rodriguez*), the defendant challenged a probation condition that stated:  " 'Not use or possess alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician . . . .' " (*Id.* at p. 592.)  This court observed that case law had interpreted the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.) as including an implicit knowledge requirement.  (*Rodriguez*, at p. 593.)  As *Rodriguez* explained:  " '[A]lthough criminal statutes prohibiting the possession, transportation, or sale of a controlled

8

substance do not expressly contain an element that the accused be aware of the character of the controlled substance at issue [citations], such a requirement has been implied by the courts.' [Citation.] 'The essential elements of unlawful possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character." ' " [Citation.] 'Although the possessor's knowledge of the presence of the controlled substance and its nature as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required.' [Citation.] [¶] If a person believes an item he possesses or ingests is a controlled substance, it is no defense that he was wrong about which controlled substance it is. [Citations.] On the other hand, it is no crime to ingest a drug involuntarily, for example, if someone secretly spiked the punch at a party. [Citation.]" (*Ibid.*) Thus, *Rodriguez* reasoned that the challenged probation condition reinforced the defendant's statutory obligations and thus, "the same knowledge element which ha[d] been found to be implicit in those statutes [was] reasonably implicit in the condition." (*Ibid.*)

Here, under *Rodriguez*, condition Nos. 8 and 9 are violated only if defendant knows that he possesses or uses illegal drugs or illegal controlled substances. However, *Rodriguez* also concluded that since the challenged probation condition was "not limited to substances regulated by statute, but extend[ed] to alcohol," the addition of an express knowledge requirement would "eliminate any potential for vagueness . . . ." (*Rodriguez*, *supra*, 222 Cal.App.4th at p. 594.) Accordingly, the matter will be remanded for modification of probation condition No. 8 to include a knowledge requirement because this probation condition also extended to the possession or consumption of alcohol.

Defendant argues, however, that this court should reject *Rodriguez* because it fails to follow *Sheena K.*, *supra*, 40 Cal.4th 875. *Sheena K.* is distinguishable from the present case. In *Sheena K.*, the California Supreme Court held that a probation condition that the defendant not associate with anyone " 'disapproved of by probation' " was

9

unconstitutionally vague, because it "did not notify defendant in advance with whom she might not associate through any reference to persons whom defendant knew to be disapproved of by her probation officer." (*Id.* at pp. 890-892.)  In contrast to *Sheena K.*, here, as explained in *Rodriguez*, there are statutes and case law that would protect defendant's due process rights.

### D.  Probation Supervision Fee

The trial court imposed various fines and fees, including a monthly probation supervision fee of $50.  Defendant contends that the trial court erred when it failed to determine whether he had the ability to pay the probation supervision fee.  He also contends that the record does not support his ability to pay this fee.

Prior to imposition of a probation supervision fee, Penal Code section 1203.1b requires:  (1) the trial court to order the defendant to report to the probation officer, who determines the defendant's ability to pay the fee; (2) the probation officer to inform the defendant that he or she is entitled to a court hearing on his ability to pay the fee; and (3) the trial court to hold a hearing to determine the defendant's ability to pay unless the defendant waives his right to a hearing.[3]

---

[3]  Penal Code section 1203.1b, subdivision (a) provides in relevant part:  "[I]n any case in which a defendant is granted probation or given a conditional sentence, the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . .  The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs.  The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay.  The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount.  The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver."

10

Relying on *People v. McCullough* (2013) 56 Cal.4th 589 (*McCullough*), the Attorney General argues that defendant's failure to object to imposition of the fee forfeited the issue on appeal.[4] *McCullough* held that a defendant forfeits a challenge to the sufficiency of the evidence of his ability to pay a booking fee if he has failed to object when it was imposed. (*McCullough*, at p. 591.) However, *McCullough* also distinguished the booking fee statute from other fee statutes, including Penal Code section 1203.1b, on the ground that the booking fee statute lacked procedural safeguards, which indicated "that the Legislature considers the financial burden of the booking fee to be de minimis" making "the rationale for forfeiture . . . particularly strong." (*McCullough*, at pp. 598-599.) The imposition of procedural safeguards in Penal Code section 1203.1b indicates that the Legislature did not consider the financial burden of the probation supervision fee to be de minimis, thereby severely weakening the rationale for forfeiture. Thus, we conclude that defendant has not forfeited his sufficiency of the evidence argument regarding the probation supervision fee under *McCullough*.

Here, there is no evidence that the procedures outlined in Penal Code section 1203.1b were followed. There is also nothing in the record to support an implied finding that defendant had the ability to pay the probation supervision fee. Accordingly, the case must be remanded.

### III.    Disposition

The judgment is reversed. On remand, the trial court shall determine defendant's ability to pay the probation supervision fee under Penal Code section 1203.1b. The trial

---

[4]     The California Supreme Court is currently considering the issue of whether the failure to object to probation supervision fees in the trial court constitutes forfeiture of the issue on appeal. (*People v. Aguilar* (2013) 219 Cal.App.4th 1094, review granted Nov. 26, 2013, S213571; *People v. Trujillo*, review granted Nov. 26, 2013, S213687; *People v. Valenzuela* (2013) 220 Cal.App.4th 159, review granted Jan. 15, 2014, S214485, briefing deferred; *People v. Povio* (2014) 227 Cal.App.4th 1424, review granted Oct. 15, 2014, S220685, briefing deferred.)

court is also directed to modify condition No. 8 to state: "The defendant shall not knowingly possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale."

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.