Filed 7/30/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041363 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1369715) |
| v. | |
| JAMES EDWARD DELAPENA, | |
| Defendant and Appellant. | |

## I. INTRODUCTION

After his motion to suppress was denied, defendant James Edward Delapena pleaded no contest to felony possession of methamphetamine (former Health & Saf. Code, § 11377, subd. (a), count 1) and misdemeanor possession of controlled substance paraphernalia (former Health & Saf. Code, § 11364.1, count 2).

Defendant was placed on Proposition 36 probation (Pen. Code, § 1210.1) for two years. The trial court imposed a number of probation conditions, including a probation condition that bars defendant from possessing or consuming illegal drugs or alcohol, and a probation condition that bars defendant from owning or possessing firearms or ammunition. The trial court also ordered defendant to pay various fees and fines, including a $50 laboratory analysis fee for each of his two convictions. (Health & Saf. Code, § 11372.5, subd. (a).)

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III. A., III. C., III. D, and the concurring opinion.

On appeal, defendant contends: (1) the trial court erred by denying his motion to suppress because his detention was not supported by reasonable suspicion of criminal activity and his pat search was not supported by reasonable suspicion that he was armed and dangerous; (2) his conviction of felony possession of methamphetamine must be reduced to a misdemeanor pursuant to Proposition 47; (3) the word "knowingly" should be inserted into the probation conditions referenced above; and (4) one of the laboratory analysis fees must be stricken.

For the reasons stated below, we will modify the challenged probation conditions and affirm the order of probation.

## II. BACKGROUND

### A. *Evidence at the Motion to Suppress*

#### 1. Testimony of Officer Stephens

Santa Clara Police Officer Peter Stephens was on duty at 5:14 a.m. on November 10, 2013, when he was dispatched to a residence near the intersection of Pierce Street and Benton Street in response to a "suspicious circumstances call." The residence was under construction. A neighbor had observed people entering the property and had seen an unfamiliar pickup truck parked at the residence. The neighbor believed that the people might be stealing construction materials from the property. According to Officer Stephens, it is common for burglaries to occur at that time of day.

Three other police officers responded, and a fifth officer arrived later. The officers observed a pickup truck parked outside of the residence. The pickup truck had a motorcycle in the back. A female was inside the pickup truck. She told an officer that "her boyfriend was inside the residence and she didn't know why."

Officer Stephens and another officer decided to search the property "to make sure that there wasn't a burglary occurring." The officers entered the backyard through a gate, with their weapons drawn. It was dark out, so the officers used lights that were attached

2

to their weapons. The officers saw two male subjects: defendant and Christopher Riehm. The officers asked the two men to come out of the back yard and sit on the front curb. Because the men were cooperative, the officers put their weapons back into their holsters as they walked to the front of the residence.

Officer Stephens noticed that both men were wearing baggy clothing and that they "had a lot of bulges in their pockets," which made him "a little concerned" about his safety. Officer Stephens was aware that people who enter construction sites to commit burglaries "often have tools and things to pry things open," so he was concerned that such tools "could be used as a weapon." He therefore decided to pat search both men.

Before doing the pat searches, the officers asked the men why they were at the property. Defendant said that he was the owner of the pickup truck, that he had given Riehm a ride to the property, and that he had transported Riehm's motorcycle as well. Riehm said that he did construction work at the property and that "he was allowed to be there."

After speaking to the two men, Officer Stephens "still felt that there was a significant safety issue" as to himself and the other officers, so he proceeded to pat search the two men for weapons. Officer Stephens first pat searched Riehm, who consented to the search. He then asked defendant if he had any weapons. Defendant initially said "no," but then he "stopped himself and said that he did have a knife in one of his pockets." Officer Stephens asked if he could pat search defendant for weapons, but defendant said, "No." Officer Stephens decided to conduct the pat search anyway, since defendant had admitted to possession of a weapon and because he was concerned, based on the "other bulges" in defendant's pockets, that defendant could have an additional weapon.

During the pat search, Officer Stephens found a folding, spring-action knife in defendant's right front pocket. The other items in defendant's front pockets did not feel like weapons. When patting down defendant's rear pockets, Officer Stephens felt "the

3

distinctive shape of a meth pipe." He removed the pipe from defendant's pocket and saw that it contained "black and white residue." He therefore placed defendant under arrest for possession of drug paraphernalia, and he conducted a search incident to arrest. During that search, Officer Stephens found two containers of methamphetamine.

While Officer Stephens was conducting the pat searches, another officer contacted the owner of the property and determined that Riehm was authorized to be on the premises. Officer Stephens learned that information after he finished conducting the pat searches.

### 2. Defense Testimony

Riehm testified that at the time of the incident, he was living and working at the residence that was under construction. He lived in the garage, which was not under construction at the time.

Reihm did not know defendant prior to the day of the incident. At about 5:00 a.m., Riehm's motorcycle had broken down in downtown San Jose. He saw that defendant had a truck, and he asked defendant to help him jump start the motorcycle. When that did not work, defendant offered to help Riehm transport the motorcycle home, and he asked if Riehm would give him "cash for gas." When they arrived at the residence, defendant accompanied Riehm inside the garage so that Riehm could give him money. The police arrived as they were exiting the garage.

According to Riehm, the officers did not have their weapons drawn, but they told defendant and Riehm, "Just hold it right there," and they told the two men to sit on the curb. As they were being escorted to the curb, Riehm told the officers, "I'm allowed to be here," and he provided the phone number of the property owner. Riehm gave his consent when an officer asked to search him. Riehm heard an officer ask defendant whether he had any weapons on his person, and he heard defendant "volunteer[] something" in response, but he did not think that defendant handed the officer the knife.

4

The property owner, Mohsen Kazemi, testified that Riehm was allowed to stay in the garage while he worked at the residence.

Defendant testified that he and his girlfriend had just been to a doughnut shop at 5:00 a.m. on November 10, 2013, when Riehm approached and asked for help with his motorcycle. After unsuccessfully trying to jump start the motorcycle, defendant offered to "haul" the bike back to Riehm's home, asking for "a few bucks for gas." He loaded the motorcycle into his truck and drove Riehm home, then helped him unload the motorcycle. Riehm asked defendant to come into the garage so he could give defendant money. As they were leaving the garage, they saw the officers.

After the officers accompanied defendant and Riehm to the curb, one asked to search defendant. Defendant said, "No, I didn't do nothing wrong." The officer said, "Okay. I'm just going to pat you down." The officer asked defendant if he had any "illegal weapons." Defendant said, "No," but when the officer added, "Or knife," defendant said, "As a matter of fact I have a knife." Defendant testified that he pulled the knife out of his pocket and gave it to an officer before Officer Stephens performed the pat search.

### 3. Rebuttal Evidence

Officer Stephens testified that defendant did not remove a knife from his pocket during the incident. Under the circumstances, he would not have allowed someone to reach into a pocket to produce a weapon.

### B. *Charges, Suppression Motion, Pleas, and Sentence*

Defendant was charged with felony possession of methamphetamine (former Health & Saf. Code, § 11377, subd. (a), count 1) and misdemeanor possession of controlled substance paraphernalia (former Health & Saf. Code, § 11364.1, count 2).

Defendant filed a motion to suppress (Pen. Code, § 1538.5), alleging that he was detained and searched without probable cause, reasonable suspicion, or valid consent. Defendant asserted that the prosecution was obligated to justify the warrantless search

5

and seizure. (See *People v. Williams* (1999) 20 Cal.4th 119, 130.) The prosecution filed a written response, arguing that there was reasonable suspicion to justify defendant's initial detention as well as the subsequent pat search, and that the methamphetamine was found pursuant to a lawful search incident to arrest. After a hearing, the trial court denied the motion to suppress.

A jury trial began on August 5, 2014, but on the second day of trial, defendant pleaded no contest to both charges. That same day, the trial court proceeded to sentence defendant, placing him on Proposition 36 probation (Pen. Code, § 1210.1) for two years and ordering him to pay various fees and fines, including two $50 laboratory analysis fees (Health & Saf. Code, § 11372.5, subd. (a)). The trial court imposed a number of probation conditions. One probation condition provided, "You shall not possess or consume illegal drugs or alcohol or knowingly be anywhere that illegal drugs are used or sold or where alcohol is the major item of sale." Another probation condition provided, "You shall not own or possess or have in your custody or control any firearm or ammunition for the rest of your life."

### III. DISCUSSION

#### A. *Denial of Motion to Suppress*

Defendant contends the trial court erred by denying his motion to suppress. He argues (1) his detention was not supported by reasonable suspicion that he was engaged in criminal activity and (2) the pat search was not justified by a reasonable belief that he was armed and dangerous.

#### 1. Proceedings Below

At the hearing on defendant's motion to suppress, the prosecutor argued that the detention was lawful because the officers had "a duty to investigate," and that the pat search was justified "for officer safety reasons." The prosecutor pointed out that there had been a report of suspicious activity, that defendant's girlfriend told the police she did

6

not know why defendant was there, that it was 5:00 a.m., that the residence was under construction, and that burglars at construction sites are known to carry weapons and tools. Defendant's admission to having a knife provided "even more reason to pat search."

Defendant argued that because Riehm told the officers that he was authorized to be at the residence, there was no need to further investigate the report of suspicious activity. Defendant also argued that officer safety did not justify the pat search, since there were "at least four officers" who had weapons, and because the officers had felt safe enough to put their weapons away due to defendant and Riehm being cooperative.

The trial court ruled that the pat search was "objectively justified given the circumstances and information the officers had at the time" and that there was no Fourth Amendment violation.

### 2. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### 3. Analysis – Detention

We first address defendant's claim that his detention was not justified by reasonable suspicion of criminal activity. " 'The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons, including unreasonable investigative stops. [Citations.]' " (*People v. Leath* (2013) 217 Cal.App.4th 344, 350 (*Leath*).) Before an officer can detain someone, there must be reasonable suspicion to believe that the person is engaged in criminal activity. "[T]he temporary detention of a person for the purpose of investigating possible criminal activity

7

may, because it is less intrusive than an arrest, be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity. [Citations.]" (*People v. Souza* (1994) 9 Cal.4th 224, 230.)

"Reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause, including an anonymous tip. [Citation.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1083 (*Wells*).) " 'In determining the lawfulness of a temporary detention, courts look at the " 'totality of the circumstance' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." [Citations.]' [Citation.]" (*Leath, supra,* 217 Cal.App.4th at p. 354.) " '[A]n investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." [Citation.]' [Citation.]" (*Wells, supra,* at p. 1083.)

In this case, the detention of defendant and Riehm was supported by reasonable suspicion of criminal conduct. The police received a "suspicious circumstances call" reporting activity at a construction site at 5:14 a.m., a time when burglaries often occur. The officers first encountered defendant's girlfriend, who was unable to provide an explanation for why defendant was at the premises. They then found defendant and Riehm in the backyard of a residence that was under construction. At the time, the officers had no confirmation that Riehm was authorized to be on the premises. Looking at the totality of the circumstances, the temporary detention of defendant and Riehm for the purpose of investigating their activity was well within " ' "the proper exercise" ' " of the officers' duties. (*Wells, supra,* 38 Cal.4th at p. 1083; see *United States v. Mattarolo* (9th Cir. 2000) 209 F.3d 1153, 1157 [after seeing the defendant backing out of a closed

8

construction area at midnight, officer was justified in conducting an investigative vehicle stop "to resolve any possible ambiguity in the defendant's conduct"].)

### 4. Analysis – Pat Search

We next address defendant's contention that the pat search for weapons was not justified by a reasonable suspicion that defendant was armed and dangerous. In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the United States Supreme Court held that the Constitution permits "a reasonable search for weapons for the protection of the police officer, where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual." (*Terry, supra,* at p. 27.) A pat search for weapons is justified if "a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." (*Ibid.*) "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the pat search. (*Id.* at p. 21.) "The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]" (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 (*Dickey*).)

Defendant contends the facts of the instant case are "strikingly similar to" those in *Dickey, supra,* 21 Cal.App.4th 952. We disagree. In *Dickey,* the encounter between the defendant and two officers occurred during the daytime. (*Id.* at p. 954.) The officers saw the defendant's car stopped in the roadway with its engine running, and they saw the defendant moving around in his car. The officers asked the defendant and his passenger to exit the car, obtained consent to search a backpack, then pat searched the defendant and passenger after finding baking powder or soda in the backpack. (*Id.* at pp. 954-955.) Although "[t]he deputy testified that he performed the patdown search for 'officer safety,' " there were no specific and articulable facts showing that the defendant might have been armed and dangerous. (*Id.* at p. 956.)

9

In this case, the encounter occurred at about 5:14 a.m., when it was dark out. The police had been dispatched to the residence, which was under construction, based on a "suspicious circumstances call." Upon arriving, a female told officers that her boyfriend was in the residence but she did not know why. The officers found defendant and Riehm in the back yard of the property. The officers knew that it was common for burglaries to occur at construction sites and at that time of the morning, and that it was common for burglars to carry weapons or tools. Defendant wore baggy clothing, which could have hidden weapons or tools. (See *People v. Collier* (2008) 166 Cal.App.4th 1374, 1378 [officer had reasonable concerns for his safety under the circumstances, which included defendant's baggy clothing].) Defendant admitted he did have a knife on him. These were "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the pat search (*Terry, supra,* 392 U.S. at p. 21) because "a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger" (*id.* at p. 27).

Defendant also points out that the officers here "*chose* not to handcuff [defendant] and Riehm" and "*chose* to return their guns to their holsters." Defendant asserts that these actions demonstrate that the officers did not have any actual fear for their safety. However, Officer Stephens specifically testified that a subject who is cooperative can become uncooperative, and that officer safety remained a concern despite defendant's cooperation. Moreover, the subjective intent of the officers is irrelevant to the determination of whether there was reasonable suspicion justifying the pat search. Reasonable suspicion turns on an objective test: whether "a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." (*Terry, supra,* 392 U.S. at p. 27.)

In sum, the trial court did not err by denying defendant's motion to suppress.

10

### B.    *Proposition 47 Retroactivity*

Defendant contends that this court must order his conviction of felony possession of methamphetamine (former Health & Saf. Code, § 11377, subd. (a)) reduced to a misdemeanor.  He points out that after his conviction and sentencing, Proposition 47 was passed and took effect, reducing numerous property and drug offenses—including the crime of possession of methamphetamine—to misdemeanors.  Defendant contends he is entitled to the retroactive application of Proposition 47's reduced penalties because his case is not yet final.

The Attorney General contends that Proposition 47's reduced penalty provisions do not operate retroactively and that defendant must file a petition for recall of his sentence pursuant to Penal Code section 1170.18 in order to have his conviction reduced to a misdemeanor.

### 1.    Legal Background:  Proposition 47

On November 4, 2014, voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (the Act).  (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014), effective Nov. 5, 2014.)  Proposition 47 reclassified certain felony drug and theft related offenses as misdemeanors and enacted a new statutory provision whereby a person serving a felony sentence for the reclassified offenses can petition for a recall of his or her sentence.  (Pen. Code, § 1170.18, subd. (a).)

In section 2 of the initiative, the electorate declared that it was enacting the Act "to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment."  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2.)

Section 3 of the initiative specified six items that comprised the "purpose and intent of the people of the State of California" in enacting the Act:  "(1) Ensure that

11

people convicted of murder, rape, and child molestation will not benefit from this act.  [¶] (2) Create the Safe Neighborhoods and Schools Fund . . . .  [¶]  (3) Require misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes.  [¶]  (4) Authorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors.  [¶]  (5) Require a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety.  [¶]  (6) This measure will save significant state corrections dollars on an annual basis. . . .  This measure will increase investments in programs that reduce crime and improve public safety, . . . which will reduce future expenditures for corrections." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3.)

The statutes amended by Proposition 47 include Health and Safety Code section 11377, which now provides that possession of certain controlled substances, including methamphetamine, "shall be punished by imprisonment in a county jail for a period of not more than one year, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 of the Penal Code if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 of the Penal Code[1] or for an offense requiring registration pursuant to subdivision (c) of Section 290 of the Penal Code." Thus, since the passage of Proposition 47, possession of methamphetamine is punishable as a misdemeanor unless the defendant has certain disqualifying prior convictions.

Proposition 47 also created Penal Code section 1170.18, which provides a new statutory remedy for "[a] person currently serving a sentence for a conviction, whether by

_____

[1] Penal Code section 667, subdivision (e)(2)(C)(iv) lists a number of serious or violent felonies, which have been referred to as "super strike" offenses.  (See *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092.)

12

trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense." (Pen. Code, § 1170.18, subd. (a).) Under Penal Code section 1170.18, subdivision (a), such a person "may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, . . . as those sections have been amended or added by this act."

Penal Code section 1170.18, subdivision (b) specifies the procedure for a trial court to follow "[u]pon receiving a petition under subdivision (a)." If the trial court finds that "the petitioner satisfies the criteria in subdivision (a), . . . the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety" (Pen. Code, § 1170.18, subd. (b)), which is defined in Penal Code section 1170.18, subdivision (c) as "an unreasonable risk that the petitioner will commit" one of the "super strike" offenses listed in Penal Code section 667, subdivision (e)(2)(C)(iv). (See *ante*, fn. 1.) "In exercising its discretion, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.18, subd. (b).)

Proposition 47 also created a remedy by which "[a] person who has completed his or her sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense," may have his or her felony conviction or convictions designated as

misdemeanors. (Pen. Code, § 1170.18, subd. (f).) Such a person "may file an application before the trial court that entered the judgment of conviction in his or her case" (*ibid.*), and "[i]f the application satisfies the criteria . . . , the court shall designate the felony offense or offenses as a misdemeanor" (*id.*, subd. (g)).

### 2. Legal Background: Retroactivity

Penal Code section 3 specifies that no part of the Penal Code is retroactive, "unless expressly so declared." Penal Code section 3 "provides the default rule" regarding retroactivity, "codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature [or electorate] . . . must have intended a retroactive application.' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).)

An "important, contextually specific qualification" to the prospective-only presumption regarding statutory amendments was set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). (*Brown, supra,* 54 Cal.4th at p. 323.) That qualification is: "When the Legislature [or electorate] has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature [or electorate] intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. [Citation.]" (*Ibid.*, fn. omitted.)

In *Estrada,* the defendant was convicted of escape without force or violence in violation of former Penal Code section 4530. (*Estrada, supra,* 63 Cal.2d at p. 743.) After his commission of the act, but before his conviction and sentence, the applicable statutes were amended so as to reduce the penalties for an escape without force or violence. (*Ibid.*) The *Estrada* court identified "[t]he problem" as "one of trying to ascertain the legislative intent," and it specified that "the problem" would be the same

14

even if the amendment had become effective while an appeal was pending. (*Id.* at p. 744.)

The *Estrada* court concluded that the Legislature must have intended that the amended statutes "should prevail," explaining: "When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at p. 745.)

"The rule in *Estrada,* of course, is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793, fn. omitted (*Nasalga*); see *Estrada, supra,* 63 Cal.2d at p. 747 ["where there is an express or implied saving clause," the prior statute "should continue to operate as to past acts"].) If there is no express saving clause, one will be implied if the Legislature or electorate has "demonstrate[d] its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1049 (*Pedro T.*).)

The "functional equivalent of a saving clause" was included in Proposition 36, the Three Strikes Reform Act of 2012 (the Reform Act). (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 172 (*Yearwood*).) The Reform Act "change[d] the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment" by amending Penal Code sections 667 and 1170.12. (*Yearwood, supra,*

15

at p. 167.) Pursuant to those amendments, life sentences now may be imposed only in "cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor." (*Ibid.*) The Reform Act also enacted a new statute, Penal Code section 1170.126, which "created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. [Citation.]" (*Yearwood, supra,* at p. 168.)

The *Yearwood* defendant had been convicted of unlawfully possessing marijuana in prison and sentenced as a third strike offender prior to the Reform Act, but his conviction was not yet final. (*Yearwood, supra,* 213 Cal.App.4th at p. 167.) Had he been sentenced after the Reform Act, it was "undisputed" that he would not have been sentenced to an indeterminate life term. (*Id.* at p. 168.) The appellate court considered whether it could issue an order that he be resentenced, or whether his remedy was "limited to filing a petition for a recall of his sentence in compliance with [Penal Code] section 1170.126." (*Ibid.*) The court acknowledged that the petition procedure could potentially have different consequences for the defendant, since under Penal Code section 1170.126, the trial court could deny his resentencing petition if it found that he posed "an unreasonable public safety risk," whereas that "discretionary finding" was not a component of the amended versions of Penal Code sections 667 and 1170.12. (*Ibid.*)

The *Yearwood* defendant argued that the Reform Act should apply retroactively, based on *Estrada,* because the Reform Act reduced the punishment for his offense. The *Yearwood* court disagreed, finding that "[t]he *Estrada* rule does not apply to the [Reform] Act because Penal Code section 1170.126 operates as the functional equivalent of a saving clause." (*Yearwood, supra,* 213 Cal.App.4th at p. 172.) The court examined the language of Penal Code section 1170.126, subdivision (b), which provides, "Any person

16

serving an indeterminate term of life imprisonment" imposed for a third strike conviction "may file a petition for a recall of sentence." The court found this phrase was "not ambiguous" and that Penal Code section 1170.126 "is correctly interpreted to apply to all prisoners serving an indeterminate life sentence imposed under the former three strikes law." (*Id.* at p. 175.)[2]

### 3. Analysis

Defendant contends the electorate intended the reduced penalty provisions of Proposition 47 to apply to all cases that were not yet final at the time the initiative was enacted. Defendant also contends that retroactive application of Proposition 47's reduced penalty provisions is required based on state and federal principles of equal protection.

We first address the question of whether retroactive application of Proposition 47's reduced penalty provisions is required under *Estrada*. As noted above, the question entails determining the intent of the electorate (*Estrada, supra,* 63 Cal.2d at p. 744), which may be signaled by the inclusion of "either an express saving clause or its equivalent" (*Nasalga, supra,* 12 Cal.4th at p. 793; see *Estrada, supra,* at p. 747).

Although Proposition 47 does not have an express saving clause, it did create Penal Code section 1170.18, which is functionally equivalent to a saving clause. (See *Nasalga, supra,* 12 Cal.4th at p. 793; *Pedro T., supra,* 8 Cal.4th at p. 1049; *Estrada, supra,* 63 Cal.2d at p. 747.) Under Penal Code section 1170.18, subdivision (a), a person who is "currently serving a sentence for a conviction" may petition for a recall of sentence. Like the resentencing petition process created by the Reform Act, the

---

[2] The California Supreme Court is currently considering whether the Reform Act's resentencing provisions apply retroactively to a defendant who was sentenced before the act's effective date, but whose judgment was not final until after that date. (See *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275; *People v. Lester* (2013) 220 Cal.App.4th 291, review granted Jan. 15, 2014, S214648; *People v. Lewis* (2013) 216 Cal.App.4th 468, review granted Aug. 14, 2013, S211494; *People v. Contreras* (2013) 221 Cal.App.4th 558, review granted Jan. 29, 2014, S215516.)

resentencing petition process contained in Penal Code section 1170.18, subdivision (a) expressly applies to persons who are "currently serving a sentence" for a crime that would have been a misdemeanor after the passage of Proposition 47.  (Cf. Pen. Code, § 1170.126, subd. (b); see *Yearwood, supra,* 213 Cal.App.4th at p. 173.)  By setting forth specific procedures as to those persons who were "currently serving a sentence" at the time the initiative took effect (Pen. Code, § 1170.18, subd. (a)), the electorate effectively and clearly "demonstrate[d] its intention" that such persons follow those procedures before being resentenced.  (See *Pedro T., supra,* at p. 1049.)

Defendant argues that by providing a separate remedy for persons who have completed their sentence (see Pen. Code, § 1170.18, subd. (f)), the electorate signaled its intent to "throw out rather than 'save' the old punishment."  We disagree.  In enacting Proposition 47, the electorate drew distinctions between three categories of persons— those who had not yet been sentenced, those who were "currently serving" sentences (Pen. Code, § 1170.18, subd. (a)), and those who had completed their sentences (*id.*, subd. (f))—and it provided resentencing procedures for the two categories of persons who had already been sentenced as felons.  The electorate chose to subject such persons to review by the trial court, consistent with its intent to ensure that sentences for persons convicted of dangerous crimes were not changed and to require felony sentences for those persons with violent or serious prior felony convictions.  In fact, the electorate specified that it intended to require "a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety."  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3.)

Defendant contends his position is supported by the voters' stated intent to "ensure that prison spending is focused on violent and serious offenses[ and] to maximize alternatives for nonserious, nonviolent crime" and to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession."  (See

18

Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, §§ 2, 3.) However, the voters also explicitly expressed the intent to "[e]nsure that people convicted of murder, rape, and child molestation will not benefit from this act," to exempt persons who have "prior convictions for specified violent or serious crimes," to "[a]uthorize *consideration* of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors," and to "[r]equire a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (*Id.*, § 3, italics added.) By construing Proposition 47's reduced penalty provisions as not retroactive, we are furthering the electorate's intent to ensure that a person previously sentenced as a felon may be resentenced to a misdemeanor only if he or she had no prior disqualifying convictions, and, for a person "currently serving a sentence" (Pen. Code, § 1170.18, subd. (a)), that the person's criminal history does not reflect potential dangerousness to public safety.

Defendant further contends that the electorate's intent is clearly demonstrated by the enactment of Penal Code section 1170.18, subdivision (m), which provides: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant." According to defendant, this language indicates the electorate intended to "expand, not restrict, a defendant's rights." The *Yearwood* court rejected a similar claim as to Penal Code section 1170.126, subdivision (k), enacted as part of Proposition 36, which contains almost identical language.[3] The *Yearwood* court held that the purpose of Penal Code section 1170.126, subdivision (k) was to "protect[] prisoners from being forced to choose between filing a petition for a recall of sentence and pursuing other legal remedies to which they might be entitled (e.g.,

---

[3] Penal Code section 1170.126, subdivision (k) provides, "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant."

petition for habeas corpus),” and it declined to find that Penal Code section 1170.126, subdivision (k) had “any impact in determining if amended [Penal Code] sections 667 and 1170.12 operate retroactively.” (*Yearwood, supra,* 213 Cal.App.4th at p. 178.) Similarly, here, Penal Code section 1170.18, subdivision (m) ensures that a person who files a resentencing petition or application is not precluded from pursuing any other legal remedies; it does not overcome the clear requirement that a person “currently serving a sentence” file a petition for recall of sentence under Penal Code section 1170.18, subdivision (a).

Finally, we do not agree with defendant that retroactive application of Proposition 47’s reduced penalty provisions is required based on state and federal principles of equal protection. Contrary to defendant’s claim, defendant is not being denied the benefits of Proposition 47, as he may obtain relief by filing a petition for recall of sentence under Penal Code section 1170.18, subdivision (a). It is unclear whether defendant is arguing that there is no rational basis for Proposition 47’s procedural distinction between persons who have been sentenced and those who have not yet been sentenced—i.e., its requirement that persons who have been sentenced file a petition for recall of sentence. To the extent he is presenting such an argument, we find a rational basis for the distinction. A determination of whether someone qualifies for misdemeanor sentencing will, in some cases, depend on factual issues such as the existence of disqualifying prior convictions. The electorate could reasonably decide that for persons sentenced prior to the passage of Proposition 47, the only way to obtain a sentence reduction should be through a petition for recall of sentence submitted to the trial court, which can then make the necessary factual determinations.

In sum, we hold that Proposition 47 is not retroactive and we decline to order defendant’s conviction of violating Health and Safety Code section 11377 reduced to a misdemeanor. (See *People v. Noyan* (2014) 232 Cal.App.4th 657, 672.) Defendant may

20

file a petition for recall of sentence pursuant to Penal Code section 1170.18, subdivision (a) in the trial court or pursue other available legal remedies.

### C. *Probation Conditions*

As noted above, the trial court imposed a number of probation conditions at the sentencing hearing. One probation condition provided, "You shall not possess or consume illegal drugs or alcohol or knowingly be anywhere that illegal drugs are used or sold or where alcohol is the major item of sale." Another probation condition provided, "You shall not own or possess or have in your custody or control any firearm or ammunition for the rest of your life."

Defendant contends these conditions are vague and overbroad, in violation of his Fourteenth Amendment due process rights, because they do not contain express knowledge requirements as to the prohibitions on the possession or consumption of illegal drugs or alcohol and the ownership, possession, or control of firearms and ammunition.

The California Supreme Court has explained the difference between vagueness and overbreadth challenges to probation conditions: "A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

The Attorney General contends that the two challenged probation conditions do not require modification because "a knowledge element is reasonably implicit" in each condition. The Attorney General contends her position is supported by *People v. Rodriguez* (2013) 222 Cal.App.4th 578 (*Rodriguez*).

21

We first address the probation condition that orders defendant not to "possess or consume illegal drugs or alcohol." In *Rodriguez*, this court agreed that a knowledge element should be added to a similar condition, which provided: " 'Not use or possess alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician . . . .' " (*Rodriguez, supra,* 222 Cal.App.4th at p. 592.) This court noted that to the extent the probation condition reinforced the defendant's "obligations under the California Uniform Controlled Substances Act, the same knowledge element which has been found to be implicit in those statutes is reasonably implicit in the condition" (*id.* at p. 593), but that because the condition was "not limited to substances regulated by statute, but extend[s] to alcohol," an express knowledge requirement would "eliminate any potential for vagueness or overbreadth in applying the condition" (*id.* at p. 594).

Here, as in *Rodriguez*, the challenged probation condition does not apply only to "illegal drugs," but also to "alcohol." Thus, the condition does not simply reinforce defendant's "obligations under the California Uniform Controlled Substances Act." (*Rodriguez, supra,* 222 Cal.App.4th at p. 593.) Following the rationale of *Rodriguez*, we will modify the probation condition to provide as follows: "You shall not possess or consume any substance you know to be illegal drugs or alcohol or knowingly be anywhere that illegal drugs are used or sold or where alcohol is the major item of sale."

We next address the probation condition that orders defendant not to "own or possess or have in your custody or control any firearm or ammunition for the rest of your life." In *Rodriguez*, this court declined to add a knowledge element to a condition that provided: " 'Not possess, receive or transport any firearm, ammunition or any deadly or dangerous weapon. Immediately surrender any firearms or ammunition you own or possess to law enforcement. (PC 12021).' " (*Rodriguez, supra,* 222 Cal.App.4th at pp. 589-590.) The reference to "PC 12021" was to former Penal Code section 12021, which made it unlawful for "[a]ny person who has been convicted of a felony" to "own[], purchase[], receive[], or ha[ve] in his or her possession or under his or her custody or

22

control any firearm." (Former Pen. Code, § 12021, subd. (a)(1)); see Stats. 2011, ch. 15, eff. April 4, 2011, operative Oct. 1, 2011.)[4] In declining to add a knowledge element to the probation condition, this court reasoned in *Rodriguez*: "The weapon possession condition in this case was obviously designed to reinforce general prohibitions against possessing a variety of deadly weapons as well as specific restrictions on felons possessing firearms and ammunition. It follows that the condition has the same implicit scienter requirements as the statutes it implements. The mental element is constitutionally clear without being explicit." (*Rodriguez, supra,* at p. 592.)

With regard to the probation condition in this case, the rationale of *Rodriguez* is not entirely applicable. The challenged probation condition here does appear to track the restrictions on firearm and ammunition possession by persons convicted of felonies (see Pen. Code, §§ 29800, 30305), but unlike the condition in *Rodriguez,* the condition here does not contain a reference to any applicable statute. Moreover, even if a knowledge element is not strictly necessary, its inclusion will help prevent arbitrary enforcement and ensure defendant is not penalized if he unknowingly possesses a prohibited item. (See *Rodriguez, supra,* 222 Cal.App.4th at p. 594.) Therefore, we will modify the probation condition to provide as follows: "You shall not own or possess or have in your custody or control anything you know to be a firearm or ammunition for the rest of your life."

### D. *Laboratory Analysis Fee*

At the sentencing hearing, the trial court ordered defendant to pay two $50 laboratory analysis fees pursuant to Health and Safety Code section 11372.5, subdivision (a)—one for each conviction. Defendant contends the laboratory analysis fee imposed for count 2, his conviction of possession of narcotics paraphernalia (former

---

[4] Former Penal Code section 12021 was repealed in 2012, but its provisions were continued without substantive change in a newly enacted statute, Penal Code section 29800. (See Stats. 2010, ch. 711, §§ 4, 6, operative Jan. 1, 2012.)

Health & Saf. Code, § 11364.1) was unauthorized and must be stricken because that offense is not listed in Health and Safety Code section 11372.5, subdivision (a).

Health and Safety Code section 11372.5, subdivision (a) provides in pertinent part: "Every person who is convicted of a violation of Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550 or subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, or Section 4230 of the Business and Professions Code shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense."  A violation of former Health and Safety Code section 11364.1 is not included in Health and Safety Code section 11372.5, subdivision (a), nor was it included at the time of defendant's offense or sentencing hearing.  (See Stats. 2005, ch. 158, § 23.)

Former Health and Safety Code section 11364.1, subdivision (a) is identical to the language in Health and Safety Code section 11364, subdivision (a), which was effective prior to 2012 and after 2014.  (Stats. 2011, ch. 738, § 11; Stats. 2014, ch. 331; § 8.) Former Health and Safety Code section 11364.1 contained a provision exempting "the possession solely for personal use of 30 or fewer hypodermic needles or syringes if acquired from a physician, pharmacist, hypodermic needle and syringe exchange program, or any other source that is authorized by law to provide sterile syringes or hypodermic needles without a prescription."  (Former Health & Saf. Code, § 11364.1, subd. (c).)  In enacting that statute and making Health and Safety Code section 11364 temporarily inoperative (see Stats. 2011, ch. 738, §§ 10, 11), the Legislature explained that its purpose was "to improve access to syringes and hypodermic needles so as to remove significant barriers for persons seeking to protect their health and the health of other persons, and to remove barriers for programs or businesses to provide sterile injection equipment and education to adults, thereby reducing the spread of communicable diseases and protecting the public health."  (Stats. 2011, ch. 738, § 1.)

24

The Attorney General contends that we must interpret Health and Safety Code section 11372.5, subdivision (a) as applying to a violation of former Health and Safety Code section 11364.1, subdivision (a), because former Health and Safety Code section 11364.1, subdivision (a) was, essentially, a temporary recodification of Health and Safety Code section 11364, subdivision (a).

The Attorney General cites to *In re Dapper* (1969) 71 Cal.2d 184 (*Dapper*), where the court stated: " 'When a statute, although new in form, re-enacts an older statute without substantial change, even though it repeals the older statute, the new statute is but a continuation of the old. There is no break in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes, because, obviously, in such event the intent of the Legislature is to secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.' " (*Id.* at p. 189; see also *Henry v. Municipal Court* (1985) 171 Cal.App.3d 721, 725 ["Numerous California cases recognize that the rule barring prosecution under a repealed statute does not apply when the repealed statute is substantially reenacted"].)

Under the rule stated in *Dapper, supra,* 71 Cal.2d at page 189, we must presume the Legislature intended that the "legal consequences" of unlawfully possessing narcotics paraphernalia, including the laboratory analysis fee required by Health and Safety Code section 11372.5, subdivision (a), continued to apply when it temporarily repealed Health and Safety Code section 11364 and enacted former Health and Safety Code section 11364.1. Thus, the trial court properly imposed the fee as to both of defendant's convictions.

25

## IV.    DISPOSITION

The probation condition that provides, "You shall not possess or consume illegal drugs or alcohol or knowingly be anywhere that illegal drugs are used or sold or where alcohol is the major item of sale" is modified to provide:  "You shall not possess or consume any substance you know to be illegal drugs or alcohol or knowingly be anywhere that illegal drugs are used or sold or where alcohol is the major item of sale."

The probation condition that provides, "You shall not own or possess or have in your custody or control any firearm or ammunition for the rest of your life" is modified to provide:  "You shall not own or possess or have in your custody or control anything you know to be a firearm or ammunition for the rest of your life."

As modified, the order of probation is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

I CONCUR:

_____
MIHARA, J.

*People v. Delapena*
**H041363**

**GROVER, J., Concurring**

I concur in the judgment, as I would not apply *People v. Rodriguez* (2013) 222 Cal.App.4th 578 as narrowly as the majority does here.

_____

Grover, J.

*People v. Delapena*
**H041363**

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.:  C1369715 |

| Trial Judge: | Hon. My-Le Jacqueline Duong |

| Attorneys for Defendant and Appellant: | Sejal H. Patel |
| James Edward Delapena | Law Office of Sejal H. Patel |
| | Sixth District Appellate Program |

| Attorney for Plaintiff and Respondent: | Sharon R. Wooden |
| The People | Office of the Attorney General |

***People v. Delapena***
H041363