Filed 3/29/22

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C089721 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 19CF00574, 18CM04096) |
| v. | |
| MICHAEL PATRICK KELLEY III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Clare Keithley, Judge. Affirmed.

Aaron Joseph Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Carlos A. Martinez, Supervising Deputy Attorney General, Catherine Tennant Nieto, Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, part II of the Discussion and the Disposition are certified for publication.

1

Defendant Michael Patrick Kelley III and the victim, L.S., were in a dating and cohabitation relationship for two years and had a child together. When the relationship ended, L.S. obtained a domestic violence restraining order against defendant. He violated the order repeatedly. In one of several consolidated cases, defendant was charged with felony stalking. He pled guilty and the charges in the other consolidated cases were dismissed. The trial court sentenced defendant to the upper term of four years in state prison, imposed fines and fees, and issued a criminal protective order.

On appeal, defendant asserts (1) the trial court abused its discretion in imposing certain fines and fees despite his inability to pay, and this violated his right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), and (2) the criminal protective order is unconstitutionally vague because its stay-away provision—providing that he "must not come within 400 yards of" L.S.—does not specify that he not do so "knowingly." After oral argument, we granted defendant's motion to file supplemental briefing, in which he asserts (3) he is entitled to resentencing pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567). In the published portion of this opinion, we conclude that we need not modify the criminal protective order because the requirement that defendant not "knowingly" come within 400 yards of L.S. is implicit in the order. In the unpublished portion of this opinion, we agree with both parties that Senate Bill 567 applies retroactively to defendant's case, and that the matter must be remanded for resentencing in compliance with Senate Bill 567. Because we shall remand for resentencing, defendant's claims concerning the trial court's imposition of fines and fees and *Dueñas* are moot and we need not address them.

We otherwise affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## The Underlying Facts

Defendant and L.S. had been in a dating and cohabitation relationship for two years when the relationship ended. According to L.S., she experienced 10 to 15 undocumented incidents of domestic violence by defendant over those two years.

On July 31, 2018,[2] the Butte County Superior Court issued a domestic violence restraining order protecting L.S. from defendant. Defendant was served with the order the same day. The order provided that defendant was to have no personal, electronic, telephonic, or written contact with L.S.

On August 14, L.S. reported that, despite the restraining order, defendant contacted her via Instagram. His message included statements urging her: " 'don't move on' " and " 'don't date other people.' " He also stated, " 'Totally lost without you,' " and " 'Put me in Jail again. . . If that's what you need to do. I am lost without you anyway. I don't care. I said I would do anything for you.' "

L.S. reported that, on August 15, defendant contacted her through Facebook. She then reported that, on August 17, defendant sent her a text message about dropping the restraining order.

On October 6, the victim received two e-mails from defendant, and she received a third the next day. One of the e-mails stated, in part, " 'I could easily sleep behind your house. I haven't. Despite what I know. I will give you the peace I can. Otherwise, people would already have found out that police response time doesn't equal home invasion time.' "

---

[1] The facts are derived from the probation report. The parties stipulated that the probation report and the preliminary hearing transcripts would serve as the factual basis for defendant's plea.

[2] All underlying facts occurred in 2018.

On October 15, L.S. reported that defendant approached her at a gas station when she was placing the couple's six-month-old child in the car seat. Defendant reached around L.S. for the child and L.S. told him he was in violation of the restraining order and he had to leave. Defendant responded, " 'You could drop the whole restraining order.' " Defendant reached around L.S. and asked her if he could have a hug. L.S. said no, put her hands up, told the defendant to leave, and he did.

L.S. contacted law enforcement on October 17, and reported that she had received more messages from defendant, this time through a third party's Facebook account. A deputy reviewed several e-mails sent between October 13 and 17. An e-mail sent on October 17 stated, " 'YOU REALLY THINK SOMEONE ELSE CAN GIVE YOU MORE THAN ME?' " The same e-mail also stated: " 'keep fucking with me and found [*sic*] out how far I will go FUCK AROUND WITH THE REAL DARKNES [*sic*] your little faggots cannot even face me you don't have to be with me . . . you obviously are a piece of shit person.' "

L.S. reported to law enforcement that "this sort of contact was an ongoing issue" since the restraining order had been in place. She had filed several reports with the Butte County Sheriff's office, describing "repeated violations of the restraining order by the defendant via text messages, emails, or contacting her in person." She again contacted law enforcement on October 26, reporting numerous additional text messages and e-mails from defendant in violation of the restraining order. She reported that he "is continually violating the restraining order." She forwarded six e-mails and 25 text messages to law enforcement.

**The Charges, Defendant's Guilty Plea, and Sentencing**

A felony complaint deemed information filed in Butte County Superior Court case No. 19CF00574 charged defendant with stalking (Pen. Code, § 646.9, subd. (b); count 1).[3] The trial court consolidated this case with three other cases.

On April 22, 2019, defendant entered a plea of guilty to felony stalking in violation of section 646.9, subdivision (b) in case No. 19CF00574. Under the terms of the plea agreement, defendant would serve a maximum of four years in state prison. The balance of the charges against defendant were dismissed with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754.)

The trial court sentenced defendant to the upper term of four years in state prison, imposed fines and fees, and issued a criminal protective order.

## DISCUSSION

### I. Senate Bill 567

While this appeal was pending, the Governor signed Senate Bill 567, effective January 1, 2022, which made changes affecting trial court sentencing discretion. In supplemental briefing, defendant asserts, based on *In re Estrada* (1965) 63 Cal.2d 740, that Senate Bill 567 applies retroactively to his case and that the matter must be remanded for resentencing. Defendant and the Attorney General agree, as do we, that Senate Bill 567 applies retroactively to defendant's case.

Among other things, Senate Bill 567 generally limits the trial court's ability to impose the upper term sentence unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this general rule is evidence of the defendant's prior convictions established by

---

[3] Further undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

5

certified records of conviction, which need not be submitted to a jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

The trial court sentenced defendant to the upper term of four years in state prison on the stalking conviction.[4] As defendant asserts and the Attorney General concedes, no factor in aggravation supporting the upper term sentence was stipulated by defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (See § 1170, subd. (b)(2), added by Stats. 2021, ch. 731, § 1.3.) Moreover, the Attorney General does not assert that the "error" in sentencing defendant to the upper term in a manner not in conformity with the provisions enacted by Senate Bill 567 was harmless. (See, e.g., *People v. Flores* (Feb. 3, 2022, A164257) [nonpub. opn.] [holding error in imposing upper term following enactment of Senate Bill 567 harmless under the rule that, if " 'a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless"].)

Thus, we shall remand the matter to the trial court for resentencing. In light of our determination, defendant's contentions with regard to the trial court's imposition of fines and fees and *Dueñas* are rendered moot and, accordingly, we need not address them.

---

[4] In sentencing defendant to the upper term, the trial court stated: "To assess the appropriate length of term the Court would view the criteria found at Rule of Court 4.421 and 4.423 noting in aggravation that the prior convictions as an adult are numerous and of increasing seriousness and the defendant was on probation when the crime was committed, the defendant's prior performance on probation was unsatisfactory, and the defendant was convicted of other crimes for which a concurrent sentence is being imposed. That is the 273.6 violation. [¶] The Court did look at factors in mitigation and on review there could find that none apply. This renders in the Court's mind that the upper term of four years is the appropriate term."

## II.  Stay-away Provision in Protective Order

### A.  Additional Background

At sentencing, the trial court issued a 10-year no-contact order pursuant to section 646.9, subdivision (k), with L.S. as the protected party.  The criminal protective order states, among other things, defendant "must have no personal, electronic, telephonic, or written contact with" L.S., "must have no contact with [L.S.] through a third party, except an attorney of record," and, in the provision challenged here, "must not come within 400 yards of" L.S.

### B.  Defendant's Contentions

Defendant asserts that the stay-away provision is unconstitutionally vague because it does not specify that he must "knowingly" stay at least 400 yards away from L.S.  Thus, based on the language of the provision, he could "unwittingly" violate the order, and the order may require him to avoid certain locations out of fear of committing an unintentional violation.  Defendant complains the stay-away provision "presents uncertainty as to whether [he] can permissibly go about his business when he is released."  Defendant asserts his contention is not forfeited because a pure question of law such as a facial challenge to a probation condition as being void for vagueness may be raised for the first time on appeal.  He urges that, to render the provision constitutional and avoid being void for vagueness, the stay-away provision must be modified to specify that he must "knowingly" stay at least 400 yards away from L.S.

### C.  Vagueness Principles

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)  "The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.  (U.S. Const., Amends V, XIV; Cal. Const., art. I, § 7.)' " (*In re Sheena K.*, at p. 890.)  The

7

vagueness doctrine bars enforcement of a law " ' "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' " (*Ibid*.) "A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' " (*Ibid*.) "In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Ibid*.)

We review a constitutional challenge to a stay-away order de novo. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 [whether the restraining order passes constitutional muster, is a question of law subject to de novo review].)

### D. Analysis

Although defendant did not object to the stay-away provision in the trial court, his contentions are cognizable on appeal because they raise a facial constitutional challenge involving a question of law that requires no reference to the sentencing record. (*In re Sheena K., supra*, 40 Cal.4th at pp. 880-889.)

Defendant relies on two cases in which similar provisions were modified to explicitly state a scienter requirement, *People v. Rodriguez* (2013) 222 Cal.App.4th 578 (*Rodriguez*), disapproved in part in *People v. Hall* (2017) 2 Cal.5th 494, 503, footnote 2 (*Hall*), and *People v. Petty* (2013) 213 Cal.App.4th 1410 (*Petty*).

In *Rodriguez*, a probation condition required the defendant " 'Stay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates.' " (*Rodriguez, supra*, 222 Cal.App.4th at p. 584.) The court noted that it "is well established that a probation violation must be willful to

8

justify revocation of probation." (*Id*. at p. 594.) The court further stated: "No reasonable law enforcement officer or judge can expect probationers to know where their victims are at all times. The challenged condition does not require defendant to stay away from all locations where the victim might conceivably be. It requires defendant to remove himself ('Stay away at least 100 yards … .') when he knows or learns of a victim's presence." (*Ibid*.) However, turning to a different issue with the condition, the *Rodriguez* court determined that the condition "suffer[ed] from a fatal ambiguity in that it has not actually designated from whom defendant should stay away." (*Ibid*.) After discussing this defect, the court further stated that the "Attorney General concedes that a knowledge element should be added to this condition." (*Id*. at p. 595.) The court concluded its discussion stating, "The trial court *may* modify the condition to require that defendant not knowingly come within 100 yards of a known or identified victim. It would be even more clear and informative if the condition actually named the victims and described any locations and vehicles that defendant is to stay 100 yards from." (*Ibid*., italics added.) The *Rodriguez* court did not state that due process *required* the addition of a knowledge element to the provision. Indeed, a different panel of the same court subsequently stated: "In [*Rodriguez*], this court rejected the argument that an order requiring the defendant to ' "[s]tay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates" ' *required* an express knowledge element." (*People v. Hartley* (2016) 248 Cal.App.4th 620, 634 (*Hartley*).)

In *Petty, supra*, 213 Cal.App.4th 1410, the defendant was subject to a stay-away order that required him "to stay at least 50 yards from the victim's residence and 100 yards from the victim and her daughter." (*Id*. at p. 1413.) After rejecting the defendant's claim that the provision was overbroad because it restricted his rights to travel and to freely associate, the court stated: "At defendant's request, however, we will modify the protective order to provide that defendant must not 'knowingly' come within 100 yards

9

of the victim or her daughter." (*Id*. at pp. 1424-1425.) The court did not hold that due process required this modification.

Defendant acknowledges *Hartley, supra*, 248 Cal.App.4th 620, cuts against his contention. In *Hartley*, as a condition of probation, the trial court prohibited the defendant from having any contact with the protected person and ordered him to stay at least 100 yards away from him. (*Id*. at p. 632.) Relying on both *Petty* and *Rodriguez*, the defendant challenged the provision as unconstitutionally vague, asserting that it was unclear whether unwitting violations fell within its scope. (*Id*. at pp. 632-633.) The *Hartley* court determined that the scope of the conduct prohibited by the condition was clear. (*Id*. at p. 633.) The court also relied on the premise that " 'a probation violation must be willful to justify revocation of probation. [Citations.] . . . "[A] crime cannot be committed by mere misfortune or accident." ' " (*Id*. at p. 634, quoting *Rodriguez, supra*, 222 Cal.App.4th at p. 594.) The court stated: the "addition of an express knowledge requirement would only make explicit what already is implicit: Hartley must be aware of or have knowledge of the [protected party] in order to personally—or by other means— contact him." (*Hartley*, at p. 635.) The court concluded: "Because we find the probation condition adequately describes the proscribed conduct and does not deprive Hartley of ' "fair warning" ' in order ' "to know what is required of him, and for the court to determine whether the condition has been violated" ' [citation], the stay-away probation condition can remain unchanged if the trial court elects to reimpose it on remand."[5] (*Ibid*.)

Since *Petty*, *Rodriguez*, and *Hartley*, our high court decided *Hall, supra*, 2 Cal.5th 494, on which the Attorney General relies. In *Hall*, the "terms of defendant's probation bar[red] him from possessing firearms or illegal drugs." (*Id*. at p. 497.) The defendant

---

[5] The court in *Hartley* remanded for resentencing based on an unrelated issue. (*Hartley, supra*, 248 Cal.App.4th at pp. 623, 628-632, 638.)

10

contended "these conditions . . . are unconstitutionally vague on their face because they do not explicitly define the state of mind, or mens rea, required to sustain a violation of probation." (*Ibid.*) Defendant requested "modification of the conditions to convey explicitly that they apply only to *knowing* possession of the prohibited items." (*Ibid.*) Our high court stated that, "[t]o withstand a constitutional challenge on the ground of vagueness, a probation condition must be sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*Id.* at p. 500.) "In determining whether the condition is sufficiently definite, however, a court is not limited to the condition's text." (*Ibid.*) "We must also consider other sources of applicable law [citation], including judicial construction of similar provisions." (*Ibid.*) "[A] probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*Id.* at p. 501.) Framing the specific issue before it, our high court stated: "a probation violation can occur only if defendant *knowingly* owned or possessed these items or had them in his custody or control. Consequently, the issue presented here is not what state of mind is required to sustain a violation of probation, but the extent to which that state of mind must be expressly articulated in the probation condition itself to provide defendant with fair warning of what the condition requires." (*Id.* at p. 500.) The court concluded that "the firearms and narcotics conditions are not unconstitutionally vague." (*Id.* at p. 501.) The court explained that relevant California case law already construed probation conditions involving the possession of firearms and drugs as prohibiting *knowing* possession of these items. (*Id.* at p. 503.) The court concluded that, "[b]ecause no change to the substance of either condition would be wrought by adding the word 'knowingly,' we decline defendant's invitation to modify those conditions simply to make explicit what the law already makes implicit." (*Ibid.*, fn. omitted.)

11

Defendant asserts *Hall* "is specific to firearms and narcotics conditions – or at least 'possessory probation conditions' – 'given the relevant case law' applicable to those conditions." Thus, defendant maintains *Hall* is not applicable to a stay-away order.[6] We disagree. We note that no published case, post-*Hall*, has ordered language added to a stay-away order to specify that the defendant must "knowingly" stay away from the protected party. And we see no principled reason to distinguish stay-away orders from firearms or possessory probation conditions, where the implicit nature of the scienter requirement is equally in play.

Indeed, in one published case, *People v. Rhinehart* (2018) 20 Cal.App.5th 1123, the court considered, among other things, a probation condition that required the defendant to " '[s]tay out of places where alcohol is the primary item of sale, such as bars or liquor stores.' " (*Id*. at p. 1125.) In considering that provision, the court discussed *Hall* and stated: "While *Hall* involved conditions barring a probationer from possessing certain contraband, *its reasoning applies with equal force to conditions prohibiting a probationer from entering certain spaces*, like the one at issue here. The condition forbidding Rhinehart from entering a business which primarily sells alcohol does not include reference to any mental state, but neither is it unconstitutionally vague. As *Hall* establishes, there is already a general presumption that a probation condition violation must be willful." (*Id*. at p. 1128, italics added.)

---

[6] The court in *Hartley* stated that, at the time that case was decided, "[w]hether a no-contact probation condition must be 'modified to explicitly include a knowledge requirement' is an issue currently pending before the California Supreme Court." (*Hartley, supra*, 248 Cal.App.4th at p. 633.) That court cited *In re A.S.* (2014) 227 Cal.App.4th 400, review granted and depublished September 24, 2014, review dismissed March 22, 2017, S220280. In that case, our high court granted review limited to whether a no-contact probation condition must be modified to explicitly include a knowledge requirement and deferred further action in *In re A.S.* pending consideration and disposition of *Hall*. (*Ibid*.) When our high court decided *Hall*, it dismissed review in *In re A.S.*

Although the instant case involves a challenge to a provision of a protective order issued pursuant to section 646.9, subdivision (k) rather than a probation condition, we apply the same approach as in *Hall* in considering defendant's vagueness challenge. As in *Hall*, we look beyond the text of the challenged provision itself and examine whether the challenged provision is too vague to be enforceable in light of similar provisions in other sources of applicable law. (*Hall, supra*, 2 Cal.5th at p. 500.)

Here, the trial court issued a criminal protective order to protect L.S. from communication and contact by defendant. (§ 646.9, subd. (k).) We note that the Penal Code requires a violation of such a protective order must be knowing. (§ 166, subd. (c)(1).) Section 166, subdivision (c)(1) states in pertinent part: "a *willful and knowing* violation of a protective order or stay-away court order . . . shall constitute contempt of court, a misdemeanor . . . ." (Italics added.) Because a violation of a protective order must be "willful and knowing" (*ibid*.), proof of a violation would require the prosecution to prove that any violation was willful and knowing. The same should apply here—for defendant to violate the challenged provision of the restraining order, and to be found in violation of that provision, he would have to be found to have willfully and knowingly come within 400 yards of L.S. Thus, the "knowing" requirement is implicit in the court's stay-away order.

As noted, to withstand a constitutional challenge on the ground of vagueness, a provision "must be sufficiently definite to inform the [restrained party] what conduct is required or prohibited, and to enable the court to determine whether [he or she] has violated the condition." (*Hall, supra*, 2 Cal.5th at p. 500.) The challenged provision here notifies defendant of the identified protected party and forbids him from coming within a specified distance of her, 400 yards.[7] That the provision does not contain the word

---

[7] The distance the court chose here strikes us as somewhat unusual, at least based on the record before us. However, defendant does not challenge the distance as being

"knowingly" does not render it unconstitutionally vague because the scienter requirement is implicit. (*Id*. at p. 503.) However, we note here, as did our high court in *Hall*, that trial courts "remain[] free to specify the requisite mens rea explicitly when imposing a condition of probation." (*Id*. at pp. 503-504.)

Because adding the word "knowingly" would not change the substance of the stay-away provision, "we decline defendant's invitation to modify [it] simply to make explicit what the law already makes implicit."[8] (*Hall, supra*, 2 Cal.5th at p. 503, fn. omitted.)

*  *  *  *  *

unreasonable. Nevertheless, in light of the substantial distance—400 yards, the length of four football fields—we emphasize that, while we are not requiring the addition of an explicit scienter requirement by inserting the word "knowingly," that requirement is indeed implicit in the stay-away provision. Defendant cannot violate that provision without doing so knowingly.

[8] To the extent defendant makes a constitutional right to travel claim, in light of our holding, we need not address that contention. Regarding the restraining order issued here, defendant is free to go wherever he wants as long as he does not knowingly violate the order's stay-away provision.

## DISPOSITION

The matter is remanded for resentencing, including consideration of the provisions of section 1170 as amended by Senate Bill 567.  The judgment and the criminal protective order filed June 13, 2019, are otherwise affirmed.

/s/
MURRAY, J.*

We concur:

/s/
BLEASE, Acting P. J.

/s/
HOCH, J.

---

\*  Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.